**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**Docket No. 8:18-cv-2779-T-TGW**

. . . . . . . . . . . . . .
                              :
**DUANE MULVILLE, et al.,**     :
                              :
                              :
        Plaintiffs,           : Tampa, Florida
                              : January 23, 2019
            v.                : 11:06 a.m. – 12:03 p.m.
                              :
**LIFELINK FOUNDATION, INC.,**  :
**et al.,**                     :
                              :
        Defendants.           :
. . . . . . . . . . . . . .


**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE THOMAS G. WILSON**
**UNITED STATES MAGISTRATE JUDGE**


**APPEARANCES:**


**Counsel for Plaintiff:**    Karen Ann Larson, Esq.
                              Century Law Group
                              751 Orchid Court
                              Marco Island, Florida  34145
                              (310)962-4768


**Counsel for Defendant:**    Richard Hanchett, Esq.
                              Brigid Merenda
                              Trenam Law
                              101 East Kennedy Boulevard
                              Suite 2700
                              Tampa, Florida  33602
                              (813)223-7474

**APPEARANCES:** (continued)


Transcriptionist:        Nikki L. Peters, RPR, CRR, CRC, FPR
                         Federal Official Court Reporter
                         801 North Florida Avenue, Second Floor
                         Tampa, Florida  33602
                         courttranscripts@outlook.com


Proceedings recorded by FTR Gold Digital Recording.
Transcript produced by Computer-Aided Transcription.

1                    **P R O C E E D I N G S**

2          **THE COURT:**  This is a proceeding in

3    Case No. 8:18-cv-2779-T-TGW, Mulville v. LifeLink.

4          Would Counsel identify themselves for the record,

5    and indicate who they represent.

6          **MS. LARSON:**  Good morning, Your Honor.

7    Karen Larson with Century Law Group, local counsel for the

8    plaintiffs.

9          **MR. HANCHETT:**  Richard Hanchett of Trenam Law for

10   LifeLink.

11         **MS. MERENDA:**  Good morning, Your Honor.

12   Brigid Merenda, partners with Richard Hanchett, from

13   Trenam Law, for LifeLink.

14         **THE COURT:**  All right.  The defendant, LifeLink,

15   has filed a motion to dismiss and to strike.  So I'll hear

16   argument on that.

17         But I'll just say at the beginning that the

18   complaint is a shotgun pleading that the Eleventh Circuit

19   has regularly condemned and tells us to look for these

20   matters and to not permit it.  So in all events, this

21   complaint is going to have to be amended.  For example, you

22   have incorporated the allegations concerning RICO in several

23   subsequent counts.  And then subsequent counts are

24   incorporated as they go on.  You can't do that.  So there's

25   that problem.

1          So in all events, that's going to have to be

2    corrected.

3          All right.  Mr. Hanchett, are you going to argue

4    or is your cocounsel?

5          **MS. LARSON:**  I will be, Your Honor.

6          **THE COURT:**  Okay.  Go ahead.

7          **MS. LARSON:**  Would you like me at the lectern?

8          **THE COURT:**  Suit yourself.

9          **MR. HANCHETT:**  Okay.  Well, Your Honor, as we said

10   in our motion to dismiss, there are two erroneous notions

11   that are included in the complaint that undermine all of the

12   claims, the first of which is the claim that the next of kin

13   in this case, the plaintiffs, have a pecuniary property

14   interest in Mr. Mulville's remains or his body.  There's a

15   conversion claim.  There's an unjust enrichment claim.  The

16   RICO claim is based on this notion that Mrs. Mulville and

17   the children own the body.

18         And we have cited to the Court in our motion to

19   dismiss both case law from Florida, the *State v. Powell*

20   case, where there was a challenge to a Florida statute that

21   allowed the MEs to remove corneas.  And the next of kin

22   challenged that on the ground that it was a taking of

23   property by State action, subject to Constitutional limits,

24   and the Florida Supreme Court held that "there is no

25   property right in a dead body."  I'm quoting.  And, for

1  example, it said "It's not common law larceny to steal a

2  corpse."

3          The right that the next of kin has in a corpse,

4  according to the Florida Supreme Court, is the right to

5  possess the body for burial, sepulture or other lawful

6  disposition.  But it's not a property right, and you cannot

7  make a property claim based on ownership of the body.

8      The plaintiff has cited a bunch of Georgia cases that

9  recognize what the plaintiff calls a quasi property right in

10  the body.  But if you read those cases, what the Georgia

11  courts are, in fact, recognizing, is, again, the right to

12  possess the body for purposes of -- like in the *Rivers* case,

13  which is the main case cited by the plaintiff, the question

14  there was the widow wanted to exhume and reinter his wife in

15  a different place.  And the Court in finding that he had a

16  right to do so, said that there is a quasi property right

17  that the next of kin had to possess the body for purposes of

18  interment or preservation.

19      Interestingly, Your Honor, the plaintiff, in its

20  opposition to our motion to dismiss, cites a case called

21  *Bauer v. North Fulton Medical Center* from 1999, Georgia

22  Court of Appeals.  And in that case, like the case -- the

23  *State v. Powell* case, there was a claim based on what the

24  plaintiff claimed was the unauthorized removal of the

25  deceased's corneas.  And she brought a claim for conversion,

1 like the claim in this case, and for bailment, among others.

2  And the Georgia court said that those claims could not

3 survive because -- and, again, I quote, "the quasi property

4 right in a corpse is not pecuniary in nature, nor should it

5 be," close quote.  It's not a property right.  It is, again,

6 this right to have the corpse for purposes of burial.

7  And, in fact, the Georgia court, the *Bauer* court,

8 in rejecting any claims based on the idea that the next of

9 kin have a property interest in a corpse or the decedent's

10 body also commented that allowing an action for conversion,

11 and for the next of kin to obtain monetary compensation for

12 the body parts of the deceased, would, in fact, violate

13 Georgia law and would violate federal law because both

14 Georgia and federal law prohibit anybody from receiving

15 valuable consideration for body parts.  And, therefore, what

16 was being asked for in that case would amount to the Court

17 awarding something that was not proper for the plaintiff to

18 proceed.

19  So any count in the complaint, Your Honor -- and this

20 one is all through them -- that is predicated on the idea

21 that Mrs. Mulville and her children own Duane Mulville's

22 body and have a pecuniary property right in it are fatally

23 flawed and should be dismissed for that reason.

24  Would you like me to continue or ...

25  **THE COURT:**  Do you want to comment on their

1  insistence that Georgia law controls?  You sort of focused

2  on Florida law to some extent.

3          **MR. HANCHETT:**  Well, whether Georgia law controls

4  or not, Your Honor, I think, is an open question.  The

5  complaint was filed here in Florida.  The allegations are

6  that there were events that took place in Georgia.

7          **THE COURT:**  The conflict, since it's filed here,

8  the conflict of law principles govern -- are determined by

9  Florida law.

10          **MR. HANCHETT:**  Right.  Right.  And Florida, to my

11  understanding, Your Honor, and the Eleventh Circuit applying

12  Florida law, looks at significant relationships, that it's

13  not the old lex loci delicti doctrine, and it looks at a

14  variety of factors.  And here in the complaint we have a

15  FDUTPA claim, a Florida statutory claim.  There's

16  allegations of events that took place in Georgia and some

17  events that took place in Florida.

18          According to the Rule 26 disclosures, the axial

19  decision to go ahead with the donation in face of the

20  alleged prohibition by --

21          **THE COURT:**  And here's sort of -- I interrupt you

22  here.  We're dealing with the complaint.  And I'm guessing

23  there's a whole lot more to the story than is in the

24  complaint.

25          **MR. HANCHETT:**  Yes, sir.

1      **THE COURT:** Okay. But we're not there yet.

2      **MR. HANCHETT:** Right.

3      **THE COURT:** So I'm surmising, but I can't base

4  anything on what isn't in the complaint.

5      **MR. HANCHETT:** No, I understand, Your Honor.

6      So the complaint is a mixed bag in terms of

7  whether Florida or Georgia law applies. I would submit,

8  based on the *Bauer* case, which is a Georgia case, where the

9  Georgia court said you cannot bring a claim for conversion

10 as the next of kin because there is not a pecuniary property

11 right, and that the result is the same under Florida or

12 Georgia law, that in either state there is no property right

13 in the remains of the deceased.

14     **THE COURT:** All right. Go ahead.

15     **MR. HANCHETT:** Okay. The other fatal flaw that

16 runs throughout the complaint, Your Honor, is this

17 contention that consent was required from Mrs. Mulville for

18 LifeLink to procure the heart. And that is, again, through

19 all counts. And it ignores the way the statutes in Florida

20 and Georgia work with respect to organ donation and

21 anatomical gifts.

22     Now, the plaintiffs, they have this strange

23 allegation that Duane Mulville, open quote, "had not

24 consented to be a donor in Georgia," close quote. They

25 don't allege that he had not ever made an anatomical gift.

1    They do not allege that he had never consented to be a

2    donor.  And also in the complaint they take the position

3    that some special permission was needed for him to be a

4    donor in Georgia.

5            Well, Your Honor, both Florida and Georgia have

6    adopted their own versions of the Uniform Anatomical Gifts

7    Act, the UAGA.  And both of those statutes -- and we've gone

8    through this in our motion to dismiss and supporting

9    memorandum.  Both the Florida and the Georgia UAGAs say,

10   "This is how you can make, during your lifetime, a donation.

11   You can have it on your license.  You can get on the

12   registry.  You can execute a living will.  You can execute a

13   formal designation of gift, any of those things.  And all of

14   those make you a donor.  They constitute anatomical gift

15   during the lifetime of the decedent."

16           Both the Florida and the Georgia statutes say that

17   if somebody made a valid anatomical gift in another state,

18   that that gift is valid, treated as valid, and honored in

19   the state in which the death occurred.  So if a gift was

20   validly executed in Florida by me, I've got it on my

21   license, and I die on my trip to Yellowstone in Wyoming,

22   Wyoming can treat that valid gift I made in Florida as valid

23   in Wyoming.  Here, if Mr. Mulville made an anatomical gift

24   during his lifetime in another state --

25           **THE COURT:**  There's -- I'm back to my point I

1  made, yeah.

2       **MR. HANCHETT:**  Yes.  There's --

3       **THE COURT:**  We don't have that anywhere yet.

4       **MR. HANCHETT:**  That's right.  What we have is this

5  allegation that he did not consent to be a donor in

6  Georgia --

7       **THE COURT:**  Okay.

8       **MR. HANCHETT:**  -- without any allegations of fact

9  that would suggest why, if he made a gift in another state,

10  it was not valid in Georgia.  It's sort of a strange

11  pleading --

12       **THE COURT:**  Yeah.

13       **MR. HANCHETT:**  -- in the complaint.  And I

14  understand that the reasons behind that are not in the

15  complaint, and Your Honor can't consider them on a motion to

16  dismiss.  But I would suggest that that allegation in the

17  complaint can be fairly read by the Court as suggesting that

18  Mr. Mulville made a gift elsewhere, and their contention is

19  that it was not valid in Georgia.

20       **THE COURT:**  Well, maybe it doesn't go that far,

21  but maybe it might be, as you're suggesting, the complaint

22  is deficient because it doesn't allege that there was a

23  donation someplace else.

24       **MR. HANCHETT:**  Right.  Our contention would be,

25  Your Honor, that the complaint is deficient because you have

1   these two statutory schemes, which are very similar, that

2   say that spousal consent only comes up, whether a spouse

3   will or will not consent, only comes up, only arises, if the

4   deceased spouse did not execute an anatomical gift during

5   his or her lifetime.  Because if he or she did, there's no

6   need for spousal consent.  And here we have a complaint that

7   argues that Mrs. Mulville's consent was needed by LifeLink.

8   And, yet, there's no allegation of fact that would establish

9   that that part of the statute, that -- I'll call it a

10  condition precedent, that is an absence of an anatomical

11  gift, existed in this case, triggering the need for consent

12  by Mrs. Mulville.

13          And to go further, Your Honor, both statutes say,

14  in different ways, that if somebody has made a gift during

15  his or her lifetime, nobody else can revoke, alter, amend it

16  after death.  So it's not only a question of not needing

17  Mrs. Mulville's consent if Mr. Mulville made an anatomical

18  gift, it's a case where she could not alter it, and we could

19  not obey her instructions to alter, limit or revoke.  So for

20  that reason, because the -- we would say that the complaint

21  does not allege facts that establish an essential element of

22  all of the claims, which is that LifeLink needed to get

23  Mrs. Mulville's consent to procure the heart, which is what

24  is at issue in the case.

25          **THE COURT:**  All right.

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    **MR. HANCHETT:**  Now, Your Honor, we also moved with

2    respect to the specific -- I think there are seven counts.

3    Would you like me to go through those, as well?

4         **THE COURT:**  Well, you can, if you want to.  I've

5    read both memoranda.  I've read the complaint.  So I'm aware

6    of what you've argued.  It might be somewhat laborious to go

7    through each one of them.  You've made this overall theme

8    here.

9         **MR. HANCHETT:**  Right.

10        **THE COURT:**  But I'm not going to cut you off from

11   doing that, if you want to.

12        **MR. HANCHETT:**  No, Your Honor.  The --

13        **THE COURT:**  For example, you make a point with

14   respect to RICO.  There's no allegation of fraud.  Okay.

15   They sort of acknowledge that.

16        **MR. HANCHETT:**  Uh-huh.

17        **THE COURT:**  So you can address any of them that

18   you want to.  There's a claim to strike California punitive

19   damages.  And they say, "Oh, well, we really didn't mean

20   that."  So I'm aware of the various positions.

21        **MR. HANCHETT:**  I don't want to take the Court's

22   time just rehashing what is already in the motion.  I think

23   on RICO --

24        **THE COURT:**  If there's something, say, that they

25   have said in response that you want to reply to, that might

1  be productive.  But, yeah, going through and telling me what

2  you've already told me --

3        **MR. HANCHETT:**  I think on the RICO claims,

4  Your Honor, I'm not going to go through those element by

5  element.  We set out why we think those are deficient.  I

6  would just point out that the response to the motion to

7  dismiss, I think, does nothing more but cite the

8  paragraph -- a conclusory paragraph and the facts just on

9  theory.  But I won't belabor that.

10        **THE COURT:**  Okay.

11        **MR. HANCHETT:**  On the FDUTPA claim, I would like

12  to address the point that they made in response to the

13  motion to dismiss on that, Your Honor.

14        We argued that the FDUTPA claim --

15        **THE COURT:**  There's some suggestion, "Okay, we

16  really didn't mean to put Florida Statute.  We really want

17  to amend it to put in a Georgia statute."

18        **MR. HANCHETT:**  That's right.  That's right.

19        So, I mean, what I wanted to address is under the

20  Florida statute, which is this issue of whether somebody

21  like Mrs. Mulville in this case, who was not engaged with

22  LifeLink in trade or commerce -- which is what the

23  Florida Deceptive and Unfair Trade Practices statute

24  addresses and requires, is that it be in the context of

25  trade or commerce, the offering of goods, services, and that

14

1   sort of thing.  And there's nothing in the complaint that

2   suggests that that was the nature of the transaction.  But

3   that's under the Florida statute.  And if plaintiffs want to

4   drop the Florida claim and are inclined to amend --

5          **THE COURT:**  They sort of answer that argument,

6   talking about an amendment to the Florida statute.  But they

7   also say, "Well, but we really intended to use the Georgia

8   statute."

9          **MR. HANCHETT:**  Right.  Right.

10         And so with respect to the amendment that they

11  cite, Your Honor, what it did was it changed "consumers" to

12  "persons" so businesses could sue under FDUTPA.  What it

13  didn't do was eliminate the requirement that the transaction

14  be in trade or commerce.  And, in fact, one of the cases

15  that they cite, the *Kelly* case, the Court went through and

16  it said, "Oh, yeah, Ms. Kelly" -- that was the civil theft

17  demand letter case that they cite.  "Well, yeah, she's

18  somebody.  She has standing to bring this claim."  But then

19  summary judgment was granted for the defendants because the

20  Court said, but, you know, "Once we find out that she has

21  standing, she has to demonstrate that the interaction she

22  had with the defendant was, in fact, in trade or commerce."

23         And our argument would be under the FDUTPA claim,

24  that interacting with the next of kin in connection with

25  organ or tissue donation is not trade or commerce.  And they

1  certainly have not alleged facts that would establish that.

2  So if we stay under the Florida statute, that would be our

3  argument for dismissal on that count.

4        I think our memorandum sets out our position

5  clearly with respect to conversion.  Conversion requires

6  property, and this is not property.  And the same thing with

7  respect to the unjust enrichment claim.  It's hard to

8  understand what the plaintiffs are asking for there except

9  that they seem to be asking for recompense for the heart,

10 which, as we discussed already, is not allowed under law and

11 would not -- both because it's not property, and also

12 because you cannot receive things of value under the

13 National Organ Transplant Act, which the plaintiff cites in

14 support of its RICO claim.

15        On intentional affliction of emotional distress,

16 Your Honor, the one thing I would point out, which is in our

17 memorandum, if you read the allegations of the complaint,

18 the contentions here are that there were-- what constitutes

19 intentional infliction is some calls being made to

20 Mrs. Mulville.  They describe that as harassment, a call

21 where somebody at LifeLink allegedly hung up on

22 Mrs. Mulville and another time that somebody with LifeLink

23 was supposed to call and didn't.  And then they allege that

24 transporting the body to CryoLife for procurement was

25 intentional infliction.  But, again, our contention would

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1   be, Your Honor, that that cannot form a basis for

2   intentional infliction, because LifeLink had the right to do

3   so pursuant to Mr. Mulville's anatomical gift during his

4   lifetime.

5            Those do not rise to the level of outrageousness

6   that is set forth in *Metropolitan Life v. McCarson* case,

7   which we've cited.  But what I really want to call the

8   Court's attention to is that there are multiple allegations

9   with respect to intentional infliction that involve

10  communications that have nothing to do with LifeLink.  There

11  are allegations that Mr. Zelig, their attorney, told them

12  something and they were very upset by that or Mr. Lawson,

13  the director of the funeral home, told them something, and

14  they were very upset by that.  And the communications that

15  actually happened between LifeLink and anybody in the

16  Mulville family, were, according to the allegations in the

17  complaint, only with Beverly Mulville, never with anybody

18  else in the family.

19           And so when it comes to analyzing that count,

20  there's a real problem with, one, the level of conduct being

21  alleged.  But, second -- and we cite a case for this affect,

22  the *Baker v. Fitzgerald* case -- these statements, what

23  they're being told by their lawyer, what he's reporting to

24  them, and what they're hearing from the funeral director,

25  those can't possibly be the basis of claims against LifeLink

1  for intentional infliction.

2          Your Honor, I think beyond that we've made the

3  point regarding who can bring a claim on behalf of the --

4          **THE COURT:**  So just sort of -- the style of the

5  case says "Duane Mulville."  That doesn't seem right.

6          **MR. HANCHETT:**  No, it's not right, Your Honor.

7  Because to the extent that anybody has a right here, a quasi

8  property right, it's the next of kin.  There's absolutely no

9  case law that says the estate or the deceased himself has an

10  interest in the treatment of his --

11          **THE COURT:**  Rule 25 provides for the substitution

12  of parties who die.

13          **MR. HANCHETT:**  Right.

14          **THE COURT:**  So that contradicts the notion that

15  the deceased can bring a lawsuit.

16          **MR. HANCHETT:**  Right.  I think that needs to be

17  cleaned up, Your Honor.

18          **THE COURT:**  All right.  Anything you want to say

19  about negligence?

20          **MR. HANCHETT:**  I think, again, all this is in our

21  memorandum.  There's no allegation of duty.  There's no

22  allegation of what the duty would be.  There are emotional

23  distress damages being sought without the allegation of any

24  physical injury.  And Florida is still an impact state.

25          And with respect to the monetary damages that are

1   being claimed, again, we have this same problem, that this

2   is not a property right and remuneration for the body is

3   prohibited.

4           THE COURT:  All right.

5           MR. HANCHETT:  Thank you, Your Honor.

6           THE COURT:  All right.  What says the plaintiff?

7           MS. LARSON:  Good morning, Your Honor.

8           I'd be the first to agree that the pleading, the

9   complaint, needs to be amended to be more set forth.  It's

10  not my style.  However, let's talk about the fundamental

11  issues that he says the complaint is fatal.  He's using the

12  word "fatal."  They've asked for the complaint to be

13  dismissed in its entirety.

14          None of the cases that they cite to, and none of

15  the cases that I relied on, or my partner, did you have the

16  Court sustaining a demur or a motion to dismiss at this

17  stage.  They say that there is no property right.  But all

18  of the cases, including *State v. Powell*, which -- first we

19  have to decide which is the applicable law, whether it's

20  Georgia or Florida.  That will affect how we clean up the

21  complaint.

22          THE COURT:  Why do you say it's Georgia?

23          MS. LARSON:  I say it's Georgia --

24          THE COURT:  Isn't that what you say?

25          THE WITNESS:  Excuse me?  Yes.

1        **THE COURT:**  Your position is that Georgia law

2  controls?

3        **MS. LARSON:**  Under the controlling significant

4  factors.  But I'm not bothered either way.  I mean,

5  obviously, he died in Georgia.

6        **THE COURT:**  Okay.  But you just said we need to

7  decide which one.

8        **MS. LARSON:**  Right.

9        **THE COURT:**  So if you're asserting Georgia, then

10  tell me why.  If you say it doesn't matter, and I don't have

11  to go there, that's fine with me too.

12        **MS. LARSON:**  Yeah.  Well, I think it matters as

13  far as we have to decide how to clean up the complaint.  We

14  can't be dodging which case -- which law is controlling.  I

15  say it's Georgia under the standards established by the

16  Supreme Court, the significant contact test, because

17  Mr. Mulville died in Georgia.  All of the contacts with

18  LifeLink was --

19        **THE COURT:**  Which Supreme Court are you talking

20  about?  Because the conflict rules are governed by the law

21  of the state of Florida, right?

22        **MS. LARSON:**  Right.

23        **THE COURT:**  So it would be the

24  Florida Supreme Court deciding what the principles are in

25  deciding which law applies.

1      **MS. LARSON:**  And this is not my bailiwick, you're

2   the judge, but I think the controlling Supreme Court case is

3   *Bishop v. Florida specialty paint*, which was cited in my

4   brief, 389 So.2d 999, where it tells the Court to consider

5   all -- as far as local law -- and I would assume that means

6   the State law that applies to the causes of action -- you

7   look at what are the most significant impact or the

8   significant factors.

9      **THE COURT:**  Yeah.  And that's what Mr. Hanchett

10   said.

11      Okay.  So that the principles in tort cases are

12   the significant contacts.  Principles in contract cases are

13   lex loci contractus.  If this is -- comes down to being a

14   contract case, there's different principles.

15      **MS. LARSON:**  Well, I think it's mostly a tort

16   case.

17      **THE COURT:**  Okay.  All right.

18      **MS. LARSON:**  Okay.  But --

19      **THE COURT:**  And it's your complaint.  So you can

20   call it whatever you want to.

21      **MS. LARSON:**  That's right.

22      **THE COURT:**  Okay.

23      **MS. LARSON:**  But I think the real causes of action

24   under either Florida or Georgia law is interference with the

25   body and that under Florida law and Georgia law, there is a

1  quasi property right --

2          **THE COURT:**  Well, but let's take the RICO statute.

3  That doesn't say anything about a quasi property right.  You

4  have to interfere with the interest of business or property

5  in order to have a RICO claim.  Do you have any authority

6  whatsoever that the property definition adopted by Congress

7  in the RICO statute covers some quasi property claim?

8          **MS. LARSON:**  No.

9          **THE COURT:**  Okay.  All right.

10          **MS. LARSON:**  Okay.  And that's a defect in my

11  research, not -- and I acknowledge that.

12          **THE COURT:**  Well, it isn't necessarily a defect in

13  the research.  There may not be any cases saying that.  So

14  there's nothing you could have found.  That was my question.

15          I wasn't questioning how thoroughly you looked.

16  But the question is, is there anything out there that says a

17  quasi property right is encumbered by the business or

18  property term in the RICO statute?

19          **MS. LARSON:**  Well, if the Court gives us authority

20  to amend the pleading, then I'm --

21          **THE COURT:**  You're going to have to amend.  I've

22  already said you've got to -- it's a --

23          **MS. LARSON:**  A mess.

24          **THE COURT:**  I didn't go that far.

25          But a shotgun pleading is, at least in the

1   Eleventh Circuit, roundly condemned.  And so that point is

2   that you've alleged something like 58 facts or something

3   like that, paragraphs, and you can incorporate those as you

4   go along.  But then you get to RICO, and you allege

5   allegations concerning RICO.  Then, as you go down the road,

6   you incorporate all the allegations in the RICO claim into

7   the succeeding ones.  And you do that sort of serially as

8   you go forward.

9          You don't do that every time, like in the

10  negligence one you didn't do that.  But you do that; and you

11  can't do that.

12         MS. LARSON:  Right.  So we'll clean that up for

13  that.

14         THE COURT:  Okay.

15         MS. LARSON:  But on the quasi property right, it's

16  very important on two dimensions.  One, in -- and

17  particularly the *Powell* case that they refer to cite as

18  still good law *Kirksey v. Jernigan*.  And there the Supreme

19  Court in Florida said, "Yes, we are very" --

20         THE COURT:  Okay.  Go ahead.

21         MS. LARSON:  "We are protective of rights

22  concerning the body."  What was alleged here in the pleading

23  is that Mrs. Mulville wanted to conduct her own autopsy.  So

24  that becomes under everything that's supposed to be

25  protected.  As far as the --

1          **THE COURT:**  Why is that?  Because she was

2    concerned about some genetic issue with respect to the

3    children?

4          **MS. LARSON:**  Yes, Your Honor.

5          **THE COURT:**  Can't you do that without an autopsy?

6          **MS. LARSON:**  Even if she was wrong as far as --

7    and that was the position they're taking, I don't know.

8    Because that's what she was told by her doctors.  So was

9    she --

10          **THE COURT:**  It's my understanding that there's

11    other methods to find genetic -- something like genetic

12    mapping or something like that to find genetic defects,

13    which is sort of beside the point.

14          **MS. LARSON:**  Well, it's --

15          **THE COURT:**  But whatever her reason was isn't

16    necessarily compelling.  But her reason was that.  But

17    that's not at issue here, why she wanted it.

18          **MS. LARSON:**  First of all, talk about the donor

19    act, which is not an issue right now.

20          **THE COURT:**  That's the point.  Let me just suggest

21    this.  Here's the point.  You have, probably scrupulously,

22    avoided saying anything about Mr. Mulville being an organ

23    donor.

24          **MS. LARSON:**  Well, I found out now he was a donor.

25          **THE COURT:**  Well, there's nothing -- that's the

1  thing.  You just recently found that out, after the

2  complaint?

3        **MS. LARSON:**  Yes.  He was a donor, apparently, in

4  North Carolina.  Because I asked -- when the motion to

5  dismiss, I asked did she find anything after that.  She

6  said, "Yes, he was a donor in North Carolina."  I said,

7  "Well, that's going to affect a lot of things."

8        **THE COURT:**  What was he doing in North Carolina?

9  Did he live in Georgia?

10        **MS. LARSON:**  He lived and resided in Georgia.  And

11  I haven't gotten a copy of that.  But even on that issue --

12  let me address that issue.  Because that will come up in the

13  future, and clean the complaint.

14        **THE COURT:**  Well, yeah.

15        **MS. LARSON:**  And I don't want to hide the ball.

16        **THE COURT:**  But here's the point.  I'm not going

17  to base any ruling on these claims on a fact or allegation

18  that he was, in fact, an organ donor.  It's not in the

19  complaint.  It isn't ripe yet.  I mean, it's going to be,

20  but it isn't now.  So --

21        **MS. LARSON:**  (Inaudible) put it in the complaint.

22  Because, I mean, there's no reason to hide a fact in the

23  amended complaint.

24        **THE COURT:**  Okay.

25        **MS. LARSON:**  But if I may just --

```
 1              THE COURT:  Okay.  Well, yeah.  Okay.  But go
 2   ahead.
 3              MS. LARSON:  Yeah.
 4              THE COURT:  Well, that's going to make a
 5   significant difference and (multiple simultaneous voices).
 6              MS. LARSON:  And I'm going to address that issue.
 7              THE COURT:  So if and when you amend the
 8   complaint, you're going to add in that he was an organ donor
 9   in --
10              MS. LARSON:  North Carolina, yes.
11              THE COURT:  -- North Carolina.
12              MS. LARSON:  And, as my understanding is, that
13   he's correct.  However, a couple of points.
14              THE COURT:  Well, he didn't say it -- Mr. Hanchett
15   didn't say it --
16              MS. LARSON:  That there's --
17              THE COURT:  -- because we --
18              MS. LARSON:  -- there's uniform law.
19              THE COURT:  I asked about it.  I'm speculating
20   that's what the deal is.
21              MS. LARSON:  Yeah.
22              THE COURT:  And --
23              MS. LARSON:  Well, I'm trying to be honest and
24   forthright as to what I'm trying to --
25              THE COURT:  Well, because here's the other point.
```

```
 1   There's no point in you spinning your wheels, doing a whole
 2   lot of thing and covering up some critical fact.  Because
 3   you're just going to be wasting your time.
 4            MS. LARSON:  My point exactly.  If you're going to
 5   dismiss it, you're going to dismiss it.  And so I had to
 6   have a heart-to-heart talk, and looking at the facts and
 7   everything.  Because I was designated as local counsel after
 8   all of this occurred, the facts.  However -- however --
 9            THE COURT:  And so are you here on behalf of
10   Mr. Zelig?
11            MS. LARSON:  Well, I'm here on both of them.
12   Yeah.
13            THE COURT:  Okay.  All right.  But is he the --
14   who did the complaint?
15            MS. LARSON:  Well, he did the complaint.  But I've
16   signed off on it, obviously --
17            THE COURT:  Okay.
18            MS. LARSON:  -- so I had to edit it and --
19            THE COURT:  Yeah.  Okay.  I understand.  Okay.
20            MS. LARSON:  I'm responsible too.  I'm not trying
21   to deny my --
22            THE COURT:  I'm not faulting you.
23            MS. LARSON:  (Inaudible) different than mine.
24            THE COURT:  What did you say?
25            MS. LARSON:  His style is a little different than
```

```
 1   mine.

 2            THE COURT:  Okay.

 3            MS. LARSON:  We work --

 4            THE COURT:  Now, so when --

 5            MS. LARSON:  I use fewer words.

 6            THE COURT:  Good for you.

 7            MS. LARSON:  I'm older.

 8            THE COURT:  Yeah.  Tell me about it.

 9            MS. LARSON:  And I practiced law in California,

10   too, where age is a real issue.  So you have even less time

11   to think about it.

12            But what I wanted to tell the Court on that

13   issue --

14            THE COURT:  Okay.  Go ahead.

15            MS. LARSON:  -- is there there's still -- and he's

16   short-changing the intentional infliction of emotional

17   distress.  When you read both Georgia and --

18            THE COURT:  When I was reading the complaint, I'm

19   thinking, these phone calls, that is not intentional

20   infliction.  It isn't even close.

21            MS. LARSON:  That's not what I'm saying is

22   intentional.

23            THE COURT:  Okay.

24            MS. LARSON:  Okay?

25            THE COURT:  Well, that's what the complaint says
```

1    is intentional.

2         **MS. LARSON:**  You kind of --

3         **THE COURT:**  That's going nowhere.

4         **MS. LARSON:**  What I'm saying is the real thing --

5    and I would shorten it up -- you got a woman driving her

6    daughter, right, from her tennis match.  She gets a phone

7    call that her husband, in the top of his shape, a former

8    pitcher, beautiful guy, good looking guy -- kind of guy I

9    would have wanted as my husband -- six kids, they do

10   everything together, has died.  And then she gets a phone

11   call from LifeLink asking her permission for the body parts.

12   So you've got all of this going on, back and forth,

13   confirmation at the funeral home, agreement that she can

14   donate certain parts of the body but not the heart.  "We

15   want the heart.  We want to do our own autopsy."

16        Okay.  All of this going on for several days,

17   weeks, whatever, maybe a period of --

18        **THE COURT:**  But you put this stuff in the

19   complaint -- or not you, Mr. Zelig apparently did.

20        **MS. LARSON:**  Well, here's the point.

21        **THE COURT:**  Okay.  They were rude in talking to

22   her.  That is not intentional infliction of emotional

23   distress.

24        **MS. LARSON:**  It is emotional distress if you tell

25   me I'm going to get my husband's body back with the heart.

```
 1   You're asking my permission, and then I go to the funeral

 2   home to make arrangements, and his heart is not there.

 3   Okay?

 4        THE COURT:  Okay.  But that's the point.  Okay.

 5   Then since you're a woman of fewer words than Mr. Zelig, you

 6   can cut out this stuff about rudeness.

 7        MS. LARSON:  I don't care about rudeness.

 8        THE COURT:  Yeah, I know.  Well, Mr. Zelig did.

 9   He was making a big deal out of it.

10        MS. LARSON:  Well, I think what he was trying to

11   portray is that we've got this back and forth.  You've got a

12   woman in shock.  Every one of the Florida --

13        THE COURT:  Now, I can understand her absolute

14   devastation.  No question about it.

15        MS. LARSON:  Every one of the Florida and Georgia

16   cases say the reason why they uphold, even with a waiver of

17   body parts rights, even if you say, "Okay, he gave

18   consent" -- by the way, he gave consent for his body parts

19   to be donated, not to be -- we don't even know where the

20   heart is.  So even his consent was breached.

21        THE COURT:  Let me ask.  Are you asking for some

22   relief with respect to the heart itself?

23        MS. LARSON:  We sure would like to know where it

24   is.  Because even Mr. Mulville didn't mean for his heart to

25   be put up on a shelf.
```

1      **THE COURT:**  You want it back?

2      **MS. LARSON:**  When you sign a donor card,

3  Your Honor, don't you mean for that heart to go into

4  somebody, not to be sitting on some shelf?

5      **THE COURT:**  I would think so.  I would think so.

6  But my question is, is there some request that the heart be

7  returned to Mrs. Mulville?

8      **MS. LARSON:**  Yes.  She's always been asking,

9  "Where's the heart?"

10      **THE COURT:**  Okay.

11      **MS. LARSON:**  I mean, it's kind of weird for the

12  children.

13      Every one of these courts -- and I love the

14  wording of both Georgia and Florida.  There's this

15  solicitation of the judges.  And they talk about the

16  Christian religion, that we understand that a body should

17  be --

18      **THE COURT:**  Well, we're not going there.

19      **MS. LARSON:**  And I'm not saying Christian, because

20  I'm not a Christian.  But the body should be respected.  And

21  we should be solicitous that when the deceased, when the

22  body dies, that the survivors are going to be, if things are

23  messed up, or not properly treated, that there's going to be

24  this horrible distress.

25      Now, even if they want to say Duane signed this

1    card, he signed the card to have his body donated, not to be

2    bounced around in different states, one.  Two, why did you

3    do all of this, telling me you were going to give me back my

4    husband's body and the heart, then the heart is

5    disappearing?  Then you tell me to call LifeLink, they say,

6    "We don't have it.  CryoLink [sic] has it."  We call

7    CryoLife, they don't have it.  Even under their own

8    procedure it was done poorly.  They certainly didn't show

9    respect for their own process.

10           If you truly had consent, you certainly didn't do

11   it very well in this process, okay?  And that's really what

12   we have here.  This is a mess.  Not because my pleading is a

13   mess, but the way they handled it.

14           **THE COURT:**  But in your pleading --

15           **MS. LARSON:**  But my pleading also needs to be

16   cleaned up.

17           **THE COURT:**  So if you redo it, are you going to

18   redo it?

19           **MS. LARSON:**  Yes.

20           **THE COURT:**  Or is Mr. Zelig going to redo it?

21           **MS. LARSON:**  (Inaudible) is bossy, but he'll work

22   with me.  Your Honor, I'm old-fashioned to a certain degree.

23   I'm 67, so I tend to be respectful towards men, believe it

24   or not, even with this voice.  So I defer to people who

25   are -- he's got a lot more practice than I do both in

1  Federal and State court.  So I tend to defer to him.  But

2  I'm older.

3          THE COURT:  You don't need to -- okay.  And so --

4          MS. LARSON:  You tell me.

5          THE COURT:  That brings with it a whole lot of

6  experience.  And you don't need to defer a whole lot to this

7  particular version of the complaint.

8          MS. LARSON:  By the way, it was a State-court

9  pleading.  I'm not a Federal court expert.  So we didn't

10  file in Federal court.  That was the other --

11          THE COURT:  I understand that.  And to some extent

12  that may well have been all right.  I don't know whether the

13  state of Florida gets all upset about shotgun pleadings.

14  But the Eleventh Circuit does.  So that may have made a

15  difference.

16          MS. LARSON:  And he also filed in Georgia, so ...

17          THE COURT:  What?

18          MS. LARSON:  Ms. Mulville apparently also filed --

19  not apparently.  She did file a lawsuit in Georgia at the

20  same time.  Because they didn't know where --

21          THE COURT:  What happened to that?

22          MS. LARSON:  They removed it to -- one of the

23  defendants -- they have defendants there, the coroner and a

24  couple other entities, including CryoLife.  They removed it

25  to Federal court there just recently.

```
 1              THE COURT:  In Georgia?

 2              MS. LARSON:  Yes.  So I don't know where the --

 3              THE COURT:  There's another Federal case pending?

 4              MS. LARSON:  Well, apparently, as of two days ago,

 5    they removed it.  I haven't caught up with that.

 6              THE COURT:  Mr. Hanchett, are you aware of that?

 7              MR. HANCHETT:  Your Honor, I'm aware that there

 8    was a complaint filed in State court in Georgia that named a

 9    bunch of defendants, including LifeLink.  And there was this

10    case filed here in Florida.  And we actually entered into an

11    agreement with opposing counsel regarding the dismissal of

12    LifeLink and its employees from the Georgia case so that

13    they could be sued here in Florida.

14              MS. LARSON:  And we dismissed the individuals.

15              THE COURT:  Including LifeLink?  And so is there

16    some claim -- is the suit still pending in Georgia?

17              MS. LARSON:  Right.  Because there's Georgia

18    defendants.

19              THE COURT:  Okay.  All right.

20              MS. LARSON:  So I don't know how we're going to

21    clean that part up.

22              THE COURT:  I know there's a -- gripes, I say.

23    But there are gripes against the coroner in Georgia, gripes

24    against, apparently, the Georgia Bureau of Investigation.

25              MS. LARSON:  CryoLife is apparently in Georgia,
```

 1  which is working with LifeLink.  So we might have to contact

 2  the CryoLife people, see if they want to litigate it here in

 3  Florida.

 4          THE COURT:  Okay.

 5          MS. LARSON:  Because they're a named defendant

 6  here.  And it's just a matter of comity.  I mean, the law is

 7  the law.  If he gave his permission, then what do we have?

 8  And I say it's still intentional affliction of emotional

 9  distress because even --

10          THE COURT:  Okay.  So let me ask you, in your

11  view, as opposed to Mr. Zelig's, who, not only is it a

12  shotgun complaint format --

13          MS. LARSON:  I'm not quite sure what that means.

14          THE COURT:  -- but it's a shotgun complaint in the

15  sense that, "I'm going to shoot at everything I got, and see

16  what I can come up with," is it your view that this

17  intentional infliction is sort of the main thrust of the

18  complaint?

19          MS. LARSON:  That's my --

20          THE COURT:  You.  Yeah.  I'm talking about you.

21  Yeah.

22          MS. LARSON:  I think that we're very strong on

23  that, if that goes to the Georgia on either -- whether it's

24  Georgia or any other law.

25          THE COURT:  Okay.

35

1          **MS. LARSON:**  Having gone through so many

2    situations with death, I stand in the shoes of Ms. Mulville.

3    And I would just be devastated.  And people --

4          **THE COURT:**  And, here, listen, I'll tell you this.

5    My wife of 50 years died last April.

6          **MS. LARSON:**  I'm so sorry, Your Honor.

7          **THE COURT:**  So I'm aware of those kinds of

8    circumstances.

9          **MS. LARSON:**  And people who practice in the art of

10   getting parts -- which my father did, and we all like to

11   do -- you would think they would be better at this.

12         **THE COURT:**  Well, that's sort of a different --

13   maybe that's your negligence claim.  I don't know.

14         **MS. LARSON:**  Well, that's my negligence -- I think

15   there's negligence here.  I think it's interference with the

16   right for the body, as well.  It's more of that.  Now,

17   Mr. Zelig is in love with --

18         **THE COURT:**  But here's sort of the point --

19         **MS. LARSON:**  Yeah.

20         **THE COURT:**  -- this complaint is cluttered with

21   claims like the RICO claim.  This isn't a RICO case.

22         **MS. LARSON:**  He thinks it's RICO.

23         **THE COURT:**  Well, no.  He's thinking it's RICO

24   because it's triple damages.  That's what he's thinking,

25   RICO.

1          **MS. LARSON:**  You don't see it as RICO based.

2          **THE COURT:**  Well --

3          **MS. LARSON:**  Based upon --

4          **THE COURT:**  It's really hard, because RICO is such

5   a complicated statute.  For example, they correctly point

6   out there's no allegations in here about fraud as a

7   predicate act.  That would have to be alleged with much more

8   specificity.  The relationship between the enterprise needs

9   to be absolutely amplified.  So it's really a complicated

10  claim.

11         **MS. LARSON:**  I agree.  I never understood RICO,

12  criminal or civil.

13         **THE COURT:**  Well, guess why?  Because it's

14  incomprehensible.  So I'm just saying, okay, if your thrust

15  is that, "Okay, what I'm really concerned about is this

16  intentional infliction," however you frame it --

17         **MS. LARSON:**  Right.

18         **THE COURT:**  -- you're probably going to be better

19  off not throwing in a RICO claim that really manufacturers a

20  whole lot of work for everybody, including you.  So that's

21  just my suggestion.

22         It's hard to come up with that.  Because to go

23  back to the first point of whether this is a property

24  interest, in order to have a RICO claim, you have to have an

25  injury to your business or property.

1    **MS. LARSON:** And that's what I really want to do

2    some research on myself. Because I haven't had enough time

3    to do that. I kind of relied on the RICO. But I really see

4    this as intentional infliction, kind of an interference with

5    the right to do with the body, maybe a breach of contract,

6    negligence.

7    **THE COURT:** Okay. And so I don't have any problem

8    with that. I'm just suggesting that you complicate your

9    position by throwing in first everything you can think of --

10   not you, Mr. Zelig.

11   **MS. LARSON:** Well, I signed it. So I'm

12   responsible.

13   **THE COURT:** -- and putting in all these other

14   claims that are sort of really stretching it if that isn't

15   the main thrust of what you had in mind.

16   **MS. LARSON:** I hear you. And I'm going to comply

17   with what you're saying.

18   **THE COURT:** Okay. I'm just suggesting.

19   **MS. LARSON:** RICO might still be in there. You

20   might have to throw it out (multiple simultaneous voices).

21   **THE COURT:** Okay. Well, and I'll deal with it.

22   **MS. LARSON:** I'm not going to step on him totally.

23   **THE COURT:** Okay.

24   **MS. LARSON:** But I hear you, Your Honor.

25   And the other thing, on the FDUTPA, I kind of like

```
 1   FDUTPA.

 2          THE COURT:  But I thought you were going to change

 3   it to the Georgia statute.

 4          MS. LARSON:  Which law are we doing?  You're the

 5   judge.

 6          THE COURT:  No.  I was waiting for you guys to

 7   tell me an argument for one or the other.  You're saying

 8   Georgia.  They focused on Florida.  You're both telling me,

 9   "Hey, it really doesn't make any difference."  And my notion

10   is, if it doesn't make any difference, I'm not going to

11   really worry about it.

12          But I've now been handed another fact that sort of

13   confuses that issue further.  If there was a donor agreement

14   someplace, in some form --

15          MS. LARSON:  Driver's license, I believe.

16          THE COURT:  What?

17          MS. LARSON:  I think it was his driver's license.

18          THE COURT:  Driver's license?

19          MS. LARSON:  I asked her to send it to me.

20          THE COURT:  Okay.  But it was North Carolina.

21   Okay.  That really confounds the matter.

22          MS. LARSON:  Maybe not.  If it's uniform, and they

23   respect -- I think what they're arguing --

24          THE COURT:  But it does in terms of the

25   significant conflicts.
```

1          **MS. LARSON:**  But if the law is -- yeah.

2          **THE COURT:**  Okay.

3          **MS. LARSON:**  I wasn't that good in law school in

4    that, and that was a long time ago.  Okay.

5          **THE COURT:**  Well, actually, I really enjoyed

6    conflicts.

7          **MS. LARSON:**  I figured you would, Your Honor.

8    You're a Federal judge.

9          **THE COURT:**  And I had Professor Brainerd Curry who

10   was a leading exponent of the theory.  So, yeah, it's fun

11   for me.  But, on the other hand --

12         **MS. LARSON:**  What do you think, Your Honor.

13         **THE COURT:**  I have no idea at this point.  I was

14   waiting for you guys to give me reasons why it should be one

15   or the other.

16         My rough -- I would have said Georgia --

17         **MS. LARSON:**  Yeah.  I think so.

18         **THE COURT:**  -- because he died there.  But wait a

19   minute.  If the donor was in North Carolina, I don't know.

20   That's --

21         **MS. LARSON:**  (Inaudible) Georgia.

22         **THE COURT:**  Right.  But somehow --

23         **MS. LARSON:**  (Inaudible) North Carolina driver's

24   license?  Why doesn't he have a Georgia driver's license?

25         **THE COURT:**  Wait a minute.  It's your client, not

1    mine.

2              **MS. LARSON:**  I have to find out.

3              **THE COURT:**  Okay.  All right.

4              **MS. LARSON:**  I'm being delicate, because she's

5    still -- it's very difficult to deal with an emotionally --

6              **THE COURT:**  I understand that.  I can tell you.

7    I've told you my circumstances.

8              **MS. LARSON:**  And she's not my direct client.  So

9    I'm stepping very gingerly on this.

10             **THE COURT:**  Okay.  You mean you have to go through

11   Mr. Zelig?

12             **MS. LARSON:**  No.  She talks to me directly.  But

13   I'm not the easiest person to talk to.  I'm not like the --

14   my husband says I was never born to be a nurse when I was

15   helping him through four bouts of cancer.  He says, "I'm

16   glad you don't have that gene."  So I'm not the most

17   empathetic type of person.  So sometimes I don't always have

18   the --

19             **THE COURT:**  If you had to deal with your husband

20   and cancer --

21             **MS. LARSON:**  Well, he cam with me.  He drove --

22             **THE COURT:**  What?

23             **MS. LARSON:**  He's in great shape.  He looks

24   younger than me now.

25             **THE COURT:**  Okay.  Is he, in fact, younger than

1   you?

2          **MS. LARSON:**  No.  But he sure looks it.

3          **THE COURT:**  Okay.  All right.

4          **MS. LARSON:**  In fact, I should have had him here

5   for moral support.  He volunteered.  He drove me up from

6   Marco.

7          **THE COURT:**  Okay.

8          **MS. LARSON:**  Okay.  But, Your Honor, so we'll

9   clean it up.

10          **THE COURT:**  So what I'm going to do is I'm just

11   going to grant -- they've asked for a lot of these claims to

12   be dismissed with prejudice.  But I'm going to just grant

13   the motion and give you leave to amend and then see what the

14   next version of it is --

15          **MS. LARSON:**  That's a good idea.

16          **THE COURT:**  -- because --

17          **MS. LARSON:**  And we have to make the decision,

18   Georgia or Florida.

19          **THE COURT:**  Right.  Yeah.

20          **MS. LARSON:**  It's up to us.

21          **THE COURT:**  So if you stick in the Georgia

22   statute, okay, fine, as opposed to the Florida statute.

23   What I don't really hope to see is both statutes in there

24   somehow.

25          **MS. LARSON:**  Right.  And he also had the

1  California, which I overlooked.  I even overlooked that in

2  one of the cites it said California.  I didn't see it until

3  last night.

4          THE COURT:  Well, we're not doing punitive damages

5  under California law.  That's for sure.

6          MS. LARSON:  I know it.  Well, I should have

7  caught that.

8          THE COURT:  So at this point I'm going to grant

9  the motion to dismiss but with leave to amend.

10         MS. LARSON:  How many days, Your Honor?

11         THE COURT:  How much do you want?

12         MS. LARSON:  I'm going to need at least 20 days.

13         THE COURT:  Okay.

14         MS. LARSON:  Is that okay?

15         THE COURT:  You have any problem with that?

16         MR. HANCHETT:  If that's what you need.

17         MS. LARSON:  Thank you.

18         MR. HANCHETT:  Of course not.

19         THE COURT:  Okay.

20         MS. LARSON:  He's the same age as me, Your Honor,

21  so he's (inaudible).  We've just met each other, and I was

22  saying how good in shape he was.

23         THE COURT:  Mr. Hanchett and I go back a ways.

24         MR. HANCHETT:  You know, Your Honor, I believe --

25  I was telling Brigid, I think it was 21 years ago that I

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1    tried that Radio Shack case in this courtroom. I'm sure you

2    remember.

3          **THE COURT:** Yes. Right. Yes.

4          **MR. HANCHETT:** I can't believe it's 20 years

5    later.

6          **THE COURT:** I know. Yeah. Tell me.

7          **MR. HANCHETT:** And neither of us has aged a day.

8    That's the --

9          **THE COURT:** Thank you very much. I won't argue

10    with that. Okay.

11          **MS. LARSON:** Thank you, Your Honor.

12          **THE COURT:** So I'll give you -- what did you say,

13    20 or 21?

14          **MS. LARSON:** Twenty-one is good. Thank you.

15          **THE COURT:** Okay. Because that will be three

16    weeks.

17          **MS. LARSON:** Okay. Thank you, Your Honor.

18          **THE COURT:** I'll grant the motion to dismiss with

19    leave to amend. And you should --

20          **MS. LARSON:** (Inaudible) so Mr. Zelig can read it?

21          **THE COURT:** You can order one.

22          **MS. LARSON:** Yes. So I'll order it. That would

23    be good for us both to read everything that's been said.

24          **THE COURT:** Okay. Well, I've been pretty hard on

25    Mr. Zelig and protecting you. Because if he's the one that

1  concocted this claim --

2         **MS. LARSON:**  It won't bother him at all.

3         **THE COURT:**  Okay.  Good.  Well, that's fine.

4         **MS. LARSON:**  He's not thin-skinned.  I've worked

5  with him in a lot of cases.

6         **THE COURT:**  Okay.  So, Mr. Hanchett, anything you

7  want to say about that approach?

8         **MR. HANCHETT:**  No.  What I would ask, Your Honor,

9  is it sounds to me like we're going to get a pretty

10  different pleading.

11         **THE COURT:**  That's what I'm expecting.

12         **MR. HANCHETT:**  So I would ask that we be given 20

13  days to respond to it because I --

14         **MS. LARSON:**  21.

15         **MR. HANCHETT:**  -- or whatever.

16         **THE COURT:**  Okay.

17         **MR. HANCHETT:**  I think it may take a little while

18  to analyze it.

19         **THE COURT:**  Okay.  So I'll give them 21 days to

20  file an amended complaint, and you can have 21 days to

21  respond to their --

22         **MS. LARSON:**  Thank you, Your Honor.

23         **THE COURT:**  Okay.

24         **MS. LARSON:**  Thank you.  Nice meeting you, and my

25  condolences for your wife.

1              **THE COURT:**  Well, thank you very much.

2              **MS. LARSON:**  50 years, that's a long time.

3              **THE COURT:**  Yes, it is a long time.  It's a lot of

4    memory.

5              **MS. LARSON:**  California, that's a record.

6              **THE COURT:**  Okay.  All right.  Court will be in

7    recess.

8              **MR. HANCHETT:**  Thank you, Your Honor.

9              (Proceedings adjourned at 12:03 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          **C E R T I F I C A T E**

2

3          I certify that the foregoing is a correct

4     transcript from the record of proceedings in the

5     above-entitled matter.

6

7     April 23, 2019

8

9     ___s\  Nikki L. Peters_____
      Nikki L. Peters, RPR, CRR, CRC, FPR
10    Federal Official Court Reporter
      United States District Court
11    Middle District of Florida

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**MR. HANCHETT:**
**[38]** 3/8 4/8 7/2 7/9
7/24 8/1 8/4 8/14
10/1 10/3 10/7
10/12 10/23 11/25
12/8 12/11 12/15
12/20 13/2 13/10
13/17 14/8 17/5
17/12 17/15 17/19
18/4 33/6 42/15
42/17 42/23 43/3
43/6 44/7 44/11
44/14 44/16 45/7
**MS. LARSON:**
**[142]**
**MS. MERENDA:**
**[1]** 3/10
**THE COURT:**
**[175]**
**THE WITNESS:**
**[1]** 18/24

**1**
101 [1] 1/23
11:06 [1] 1/8
12:03 [2] 1/8 45/9
1999 [1] 5/21

**2**
20 [4] 42/12 43/4
 43/13 44/12
2019 [2] 1/8 46/7

21 [5] 42/25 43/13
 44/14 44/19 44/20
223-7474 [1] 1/25
23 [2] 1/8 46/7
25 [1] 17/11
26 [1] 7/18
2700 [1] 1/24

**3**
310 [1] 1/20
33602 [2] 1/24 2/4
34145 [1] 1/19
389 [1] 20/4

**4**
4768 [1] 1/20

**5**
50 [2] 35/5 45/2
58 [1] 22/2

**6**
67 [1] 31/23

**7**
7474 [1] 1/25
751 [1] 1/19

**8**
801 [1] 2/4
813 [1] 1/25
8:18-cv-2779-T-TG
W [1] 1/3

**9**
962-4768 [1] 1/20
999 [1] 20/4

**A**
a.m [1] 1/8
about [21] 14/6
 17/19 18/10 19/20
 21/3 23/2 23/18
 23/22 25/19 27/8
 27/11 29/6 29/7
 29/14 30/15 32/13
 34/20 36/6 36/15
 38/11 44/7
above [1] 46/5
above-entitled [1]
 46/5
absence [1] 11/10
absolute [1] 29/13
absolutely [2] 17/8
 36/9
according [3] 5/4
 7/18 16/16
acknowledge [2]
 12/15 21/11
act [4] 9/7 15/13
 23/19 36/7
action [4] 4/23 6/10
 20/6 20/23
actually [3] 16/15
 33/10 39/5
add [1] 25/8

**A**

address [5] 12/17 13/12 13/19 24/12 25/6
addresses [1] 13/24
adjourned [1] 45/9
adopted [2] 9/6 21/6
affect [3] 16/21 18/20 24/7
affliction [2] 15/15 34/8
after [4] 11/16 24/1 24/5 26/7
again [7] 5/11 6/3 6/5 8/18 15/25 17/20 18/1
against [3] 16/25 33/23 33/24
age [2] 27/10 42/20
aged [1] 43/7
ago [3] 33/4 39/4 42/25
agree [2] 18/8 36/11
agreement [3] 28/13 33/11 38/13
ahead [6] 4/6 7/19 8/14 22/20 25/2 27/14
Aided [1] 2/7
al [2] 1/6 1/10

all [36] 3/14 3/20 4/1 4/3 4/11 6/20 8/14 8/19 9/13 11/22 11/25 17/18 17/20 18/4 18/6 18/17 19/17 20/5 20/17 21/9 22/6 23/18 26/8 26/13 28/12 28/16 31/3 32/12 32/13 33/19 35/10 37/13 40/3 41/3 44/2 45/6
allegation [9] 8/23 10/5 10/16 11/8 12/14 17/21 17/22 17/23 24/17
allegations [11] 3/22 7/5 7/16 10/8 15/17 16/8 16/11 16/16 22/5 22/6 36/6
allege [6] 8/25 9/1 10/22 11/21 15/23 22/4
alleged [6] 7/20 15/1 16/21 22/2 22/22 36/7
allegedly [1] 15/21
allowed [2] 4/21 15/10
allowing [1] 6/10
along [1] 22/4

already [4] 12/22 13/2 15/10 21/22
also [9] 6/10 9/2 12/1 14/7 15/11 31/15 32/16 32/18 41/25
alter [3] 11/15 11/18 11/19
always [2] 30/8 40/17
amend [9] 11/15 13/17 14/4 21/20 21/21 25/7 41/13 42/9 43/19
amended [4] 3/21 18/9 24/23 44/20
amendment [2] 14/6 14/10
among [1] 6/1
amount [1] 6/16
amplified [1] 36/9
analyze [1] 44/18
analyzing [1] 16/19
anatomical [10] 8/21 8/25 9/6 9/14 9/17 9/23 11/4 11/10 11/17 16/3
Ann [1] 1/18
another [6] 9/17 9/24 10/9 15/22 33/3 38/12
answer [1] 14/5

# A

**any [14]** 6/8 6/19 9/13 10/8 12/17 17/23 21/5 21/13 24/17 34/24 37/7 38/9 38/10 42/15
**anybody [4]** 6/14 16/15 16/17 17/7
**anything [7]** 8/4 17/18 21/3 21/16 23/22 24/5 44/6
**anywhere [1]** 10/3
**apparently [7]** 24/3 28/19 32/18 32/19 33/4 33/24 33/25
**Appeals [1]** 5/22
**APPEARANCES [2]** 1/16 2/1
**applicable [1]** 18/19
**applies [3]** 8/7 19/25 20/6
**applying [1]** 7/11
**approach [1]** 44/7
**April [2]** 35/5 46/7
**are [37]** 3/23 4/3 4/10 4/11 5/11 6/22 7/5 7/8 10/14 11/1 12/2 13/5 14/4 15/8 15/18 16/8 16/11 17/22 17/25 19/19 19/20 19/24 20/7
20/11 20/12 22/19 22/21 26/9 29/21 30/22 30/22 31/17 31/25 33/6 33/23 37/14 38/4
**argue [2]** 4/3 43/9
**argued [2]** 12/6 13/14
**argues [1]** 11/7
**arguing [1]** 38/23
**argument [5]** 3/16 14/5 14/23 15/3 38/7
**arises [1]** 11/3
**around [1]** 31/2
**arrangements [1]** 29/2
**art [1]** 35/9
**as [34]** 3/24 4/9 8/10 9/18 9/22 10/17 10/21 12/3 15/10 15/20 19/12 19/13 20/5 20/5 22/3 22/5 22/7 22/17 22/25 22/25 23/6 23/6 25/12 25/24 26/7 28/9 33/4 34/11 35/16 36/1 36/6 37/4 41/22 42/20
**ask [4]** 29/21 34/10 44/8 44/12
asked [7] 6/16 18/12 24/4 24/5 25/19 38/19 41/11
**asking [6]** 15/8 15/9 28/11 29/1 29/21 30/8
**asserting [1]** 19/9
**assume [1]** 20/5
**attention [1]** 16/8
**attorney [1]** 16/11
**authority [2]** 21/5 21/19
**autopsy [3]** 22/23 23/5 28/15
**Avenue [1]** 2/4
**avoided [1]** 23/22
**awarding [1]** 6/17
**aware [5]** 12/5 12/20 33/6 33/7 35/7
**axial [1]** 7/18

# B

**back [8]** 9/25 28/12 28/25 29/11 30/1 31/3 36/23 42/23
**bag [1]** 8/6
**bailiwick [1]** 20/1
**bailment [1]** 6/1
**Baker [1]** 16/22
**Baker v. Fitzgerald [1]** 16/22
**ball [1]** 24/15

**B**

base [2]  8/3 24/17
based [7]  4/16 5/7
 5/23 6/8 8/8 36/1
 36/3
basis [2]  16/1 16/25
Bauer [3]  5/21 6/7
 8/8
Bauer v. North [1]
 5/21
be [61]
beautiful [1]  28/8
because [41]  6/3
 6/13 8/10 10/22
 10/25 11/5 11/20
 14/19 15/11 15/12
 16/2 17/7 19/16
 19/20 23/1 23/8
 24/4 24/12 24/22
 25/17 25/25 26/2
 26/7 29/24 30/19
 31/12 32/20 33/17
 34/5 34/9 35/24
 36/4 36/13 36/22
 37/2 39/18 40/4
 41/16 43/15 43/25
 44/13
becomes [1]  22/24
been [5]  30/8 32/12
 38/12 43/23 43/24
BEFORE [1]  1/14
beginning [1]  3/17

behind [1]  10/14
being [9]  6/16
 15/19 16/20 16/23
 17/23 18/1 20/13
 23/22 40/4
belabor [1]  13/9
believe [4]  31/23
 38/15 42/24 43/4
beside [1]  23/13
better [2]  35/11
 36/18
between [2]  16/15
 36/8
Beverly [1]  16/17
Beverly Mulville [1]
 16/17
beyond [1]  17/2
big [1]  29/9
Bishop [1]  20/3
Bishop v. Florida
 [1]  20/3
body [28]  4/14 4/17
 4/25 5/5 5/7 5/10
 5/12 5/17 6/10 6/12
 6/15 6/22 15/24
 18/2 20/25 22/22
 28/11 28/14 28/25
 29/17 29/18 30/16
 30/20 30/22 31/1
 31/4 35/16 37/5
born [1]  40/14

both [16]  4/19 6/13
 9/5 9/7 9/9 9/16
 11/13 12/5 15/11
 26/11 27/17 30/14
 31/25 38/8 41/23
 43/23
bother [1]  44/2
bothered [1]  19/4
Boulevard [1]  1/23
bounced [1]  31/2
bouts [1]  40/15
Brainerd [1]  39/9
breach [1]  37/5
breached [1]  29/20
brief [1]  20/4
Brigid [3]  1/22 3/12
 42/25
Brigid Merenda [1]
 3/12
bring [4]  8/9 14/18
 17/3 17/15
brings [1]  32/5
brought [1]  5/25
bunch [2]  5/8 33/9
Bureau [1]  33/24
burial [2]  5/5 6/6
business [3]  21/4
 21/17 36/25
businesses [1]
 14/12

**C**

call [9]  11/9 15/20 15/23 16/7 20/20 28/7 28/11 31/5 31/6

called [1]  5/20

calls [3]  5/9 15/19 27/19

cam [1]  40/21

can [23]  9/10 9/11 9/11 9/12 9/12 9/22 10/17 11/15 12/4 12/17 17/3 17/15 20/19 22/3 28/13 29/6 29/13 34/16 37/9 40/6 43/20 43/21 44/20

can't [8]  3/24 8/3 10/15 16/25 19/14 22/11 23/5 43/4

cancer [2]  40/15 40/20

cannot [4]  5/6 8/9 15/12 16/1

card [3]  30/2 31/1 31/1

care [1]  29/7

Carolina [8]  24/4 24/6 24/8 25/10 25/11 38/20 39/19 39/23

case [35]  3/3 4/13

4/19 4/20 5/12 5/13 5/20 5/22 5/22 5/23 6/1 6/16 8/8 8/8 11/11 11/18 11/24 13/21 14/15 14/17 16/6 16/21 16/22 17/5 17/9 19/14 20/2 20/14 20/16 22/17 33/3 33/10 33/12 35/21 43/1

Case No. 8:18-cv-2779-T-TGW [1]  3/3

cases [11]  5/8 5/10 14/14 18/14 18/15 18/18 20/11 20/12 21/13 29/16 44/5

caught [2]  33/5 42/7

causes [2]  20/6 20/23

Center [1]  5/21

Century [2]  1/18 3/7

certain [2]  28/14 31/22

certainly [3]  15/1 31/8 31/10

certify [1]  46/3

challenge [1]  4/20

challenged [1]  4/22

change [1]  38/2

changed [1]  14/11

changing [1]  27/16

children [4]  4/17 6/21 23/3 30/12

Christian [3]  30/16 30/19 30/20

Circuit [4]  3/18 7/11 22/1 32/14

circumstances [2]  35/8 40/7

cite [7]  13/7 14/11 14/15 14/17 16/21 18/14 22/17

cited [5]  4/18 5/8 5/13 16/7 20/3

cites [3]  5/20 15/13 42/2

civil [2]  14/16 36/12

claim [30]  4/12 4/15 4/15 4/16 5/7 5/23 5/25 6/1 7/15 7/15 8/9 12/18 13/11 13/14 14/4 14/18 14/23 15/7 15/14 17/3 21/5 21/7 22/6 33/16 35/13 35/21 36/10 36/19 36/24 44/1

claimed [2]  5/24 18/1

claims [10]  4/12 6/2 6/8 11/22 13/3

**C**

claims... [5]  16/25 24/17 35/21 37/14 41/11

clean [6]  18/20 19/13 22/12 24/13 33/21 41/9

cleaned [2]  17/17 31/16

clearly [1]  15/5

client [2]  39/25 40/8

close [3]  6/5 8/24 27/20

cluttered [1]  35/20

cocounsel [1]  4/4

come [3]  24/12 34/16 36/22

comes [4]  11/2 11/3 16/19 20/13

comity [1]  34/6

comment [1]  6/25

commented [1] 6/10

commerce [5] 13/22 13/25 14/14 14/22 14/25

common [1]  5/1

communications [2] 16/10 16/14

compelling [1] 23/16

compensation [1] 6/11

complaint [47]

complicate [1]  37/8

complicated [2] 36/5 36/9

comply [1]  37/16

Computer [1]  2/7

Computer-Aided [1]  2/7

concerned [2]  23/2 36/15

concerning [3]  3/22 22/5 22/22

conclusory [1]  13/8

concocted [1]  44/1

condemned [2] 3/19 22/1

condition [1]  11/10

condolences [1] 44/25

conduct [2]  16/20 22/23

confirmation [1] 28/13

conflict [3]  7/7 7/8 19/20

conflicts [2]  38/25 39/6

confounds [1] 38/21

confuses [1]  38/13

Congress [1]  21/6

connection [1] 14/24

consent [13]  8/17 10/5 11/2 11/3 11/6 11/7 11/11 11/17 11/23 29/18 29/18 29/20 31/10

consented [2]  8/24 9/1

consider [2]  10/15 20/4

consideration [1] 6/15

constitute [1]  9/14

constitutes [1] 15/18

Constitutional [1] 4/23

consumers [1] 14/11

contact [2]  19/16 34/1

contacts [2]  19/17 20/12

contention [4]  8/17 10/18 10/24 15/25

contentions [1] 15/18

context [1]  13/24

continue [1]  6/24

continued [1]  2/1

# C

contract [3]  20/12 20/14 37/5

contractus [1]  20/13

contradicts [1]  17/14

controlling [3]  19/3 19/14 20/2

controls [3]  7/1 7/3 19/2

conversion [6]  4/15 5/25 6/10 8/9 15/5 15/5

copy [1]  24/11

corneas [2]  4/21 5/25

coroner [2]  32/23 33/23

corpse [5]  5/2 5/3 6/4 6/6 6/9

correct [2]  25/13 46/3

corrected [1]  4/2

correctly [1]  36/5

could [6]  6/2 11/18 11/18 14/12 21/14 33/13

counsel [6]  1/18 1/22 3/4 3/7 26/7 33/11

count [3]  6/19 15/3

counts [4]  3/23 3/23 8/19 12/2

couple [2]  25/13 32/24

course [1]  42/18

court [34]  1/1 1/19 2/3 4/18 4/24 5/4 5/15 5/22 6/2 6/7 6/7 6/16 8/9 10/17 14/15 14/20 18/16 19/16 19/19 19/24 20/2 20/4 21/19 22/19 27/12 32/1 32/8 32/9 32/10 32/25 33/8 45/6 46/10 46/10

Court's [2]  12/21 16/8

courtroom [1]  43/1

courts [2]  5/11 30/13

courttranscripts [1]  2/5

covering [1]  26/2

covers [1]  21/7

CRC [2]  2/3 46/9

criminal [1]  36/12

critical [1]  26/2

CRR [2]  2/3 46/9

CryoLife [5]  15/24 31/7 32/24 33/25

CryoLink [1]  31/6

Curry [1]  39/9

cut [2]  12/10 29/6

cv [2]  1/3 3/3

# D

damages [5]  12/19 17/23 17/25 35/24 42/4

daughter [1]  28/6

day [1]  43/7

days [7]  28/16 33/4 42/10 42/12 44/13 44/19 44/20

dead [1]  4/25

deal [5]  25/20 29/9 37/21 40/5 40/19

dealing [1]  7/22

death [3]  9/19 11/16 35/2

deceased [6]  6/12 8/13 11/4 17/9 17/15 30/21

deceased's [1]  5/25

decedent [1]  9/15

decedent's [1]  6/9

Deceptive [1]  13/23

decide [3]  18/19 19/7 19/13

deciding [2]  19/24 19/25

decision [2]  7/19

**D**

decision... [1]  41/17
defect [2]  21/10
  21/12
defects [1]  23/12
defendant [4]  1/22
  3/14 14/22 34/5
defendants [6]  1/11
  14/19 32/23 32/23
  33/9 33/18
defer [3]  31/24 32/1
  32/6
deficient [3]  10/22
  10/25 13/5
definition [1]  21/6
degree [1]  31/22
delicate [1]  40/4
delicti [1]  7/13
demand [1]  14/17
demonstrate [1]
  14/21
demur [1]  18/16
deny [1]  26/21
describe [1]  15/20
designated [1]  26/7
designation [1]
  9/13
determined [1]  7/8
devastated [1]  35/3
devastation [1]
  29/14
did [16]  10/5 11/4

24/5 24/9 26/14
26/15 26/24 28/19
29/8 31/2 32/19
35/10 43/12
didn't [14]  12/19
13/16 14/13 15/23
21/24 22/10 25/14
25/15 29/24 31/8
31/10 32/9 32/20
42/2
die [2]  9/21 17/12
died [5]  19/5 19/17
28/10 35/5 39/18
dies [1]  30/22
difference [4]  25/5
32/15 38/9 38/10
different [8]  5/15
11/14 20/14 26/23
26/25 31/2 35/12
44/10
difficult [1]  40/5
Digital [1]  2/7
dimensions [1]
22/16
direct [1]  40/8
directly [1]  40/12
director [2]  16/13
16/24
disappearing [1]
31/5
disclosures [1]  7/18

discussed [1]  45/10
dismiss [14]  3/15
4/10 4/19 5/20 9/8
10/16 13/7 13/13
18/16 24/5 26/5
26/5 42/9 43/18
dismissal [2]  15/3
33/11
dismissed [4]  6/23
18/13 33/14 41/12
disposition [1]  5/6
distress [7]  15/15
17/23 27/17 28/23
28/24 30/24 34/9
DISTRICT [4]  1/1
1/1 46/10 46/11
DIVISION [1]  1/2
do [29]  3/24 5/16
6/25 9/1 14/13 16/2
16/5 16/10 18/22
21/5 22/7 22/9
22/10 22/10 22/11
23/5 28/9 28/15
31/3 31/10 31/25
34/7 35/11 37/1
37/3 37/5 39/12
41/10 42/11
Docket [1]  1/3
doctors [1]  23/8
doctrine [1]  7/13
dodging [1]  19/14
does [4]  11/21 13/7

**does...** [2] 32/14 38/24
**doesn't** [8] 10/20 10/22 17/5 19/10 21/3 38/9 38/10 39/24
**doing** [5] 12/11 24/8 26/1 38/4 42/4
**don't** [24] 8/25 10/3 12/21 19/10 22/9 23/7 24/15 29/7 29/19 30/3 31/6 31/7 32/3 32/6 32/12 33/2 33/20 35/13 36/1 37/7 39/19 40/16 40/17 41/23
**donate** [1] 28/14
**donated** [2] 29/19 31/1
**donation** [5] 7/19 8/20 9/10 10/23 14/25
**done** [1] 31/8
**donor** [15] 8/24 9/2 9/4 9/14 10/5 23/18 23/23 23/24 24/3 24/6 24/18 25/8 30/2 38/13 39/19
**down** [2] 20/13 22/5

**driver's** [5] 38/15 38/17 38/18 39/23 39/24
**driving** [1] 28/5
**drop** [1] 14/4
**drove** [2] 40/21 41/5
**DUANE** [5] 1/6 6/21 8/23 17/5 30/25
**during** [6] 9/10 9/15 9/24 11/4 11/14 16/3
**duty** [2] 17/21 17/22

---

# E

**each** [2] 12/7 42/21
**easiest** [1] 40/13
**East** [1] 1/23
**edit** [1] 26/18
**either** [4] 8/12 19/4 20/24 34/23
**element** [3] 11/21 13/4 13/5
**Eleventh** [4] 3/18 7/11 22/1 32/14
**eliminate** [1] 14/13
**else** [3] 10/23 11/15 16/18
**elsewhere** [1] 10/18
**emotional** [6] 15/15 17/22 27/16 28/22

**emotionally** [1] 40/5
**empathetic** [1] 40/17
**employees** [1] 33/12
**encumbered** [1] 21/17
**engaged** [1] 13/21
**enjoyed** [1] 39/5
**enough** [1] 37/2
**enrichment** [2] 4/15 15/7
**entered** [1] 33/10
**enterprise** [1] 36/8
**entirety** [1] 18/13
**entities** [1] 32/24
**entitled** [1] 46/5
**erroneous** [1] 4/10
**Esq** [2] 1/18 1/22
**essential** [1] 11/21
**establish** [3] 11/8 11/21 15/1
**established** [1] 19/15
**estate** [1] 17/9
**et** [2] 1/6 1/10
**even** [14] 23/6 24/11 27/10 27/20 29/16 29/17 29/19 29/20 29/24 30/25

**E**

even... [4]  31/7 31/24 34/9 42/1

events [5]  3/20 4/1 7/6 7/16 7/17

ever [1]  8/25

every [4]  22/9 29/12 29/15 30/13

everybody [1] 36/20

everything [6] 22/24 26/7 28/10 34/15 37/9 43/23

exactly [1]  26/4

example [4]  3/21 5/1 12/13 36/5

except [1]  15/8

Excuse [1]  18/25

execute [3]  9/12 9/12 11/4

executed [1]  9/20

exhume [1]  5/14

existed [1]  11/11

expecting [1]  44/11

experience [1]  32/6

expert [1]  32/9

exponent [1]  39/10

extent [3]  7/2 17/7 32/11

**F**

face [1]  7/19

fact [14]  5/11 6/13 6/12 10/8 11/8 14/14 14/22 24/17 24/18 24/22 26/2 38/12 40/25 41/4

factors [3]  7/14 19/4 20/8

facts [6]  11/21 13/8 15/1 22/2 26/6 26/8

fairly [1]  10/17

family [2]  16/16 16/18

far [6]  10/20 19/13 20/5 21/24 22/25 23/6

fashioned [1]  31/22

fatal [3]  8/15 18/11 18/12

fatally [1]  6/22

father [1]  35/10

faulting [1]  26/22

FDUTPA [7]  7/15 13/11 13/14 14/12 14/23 37/25 38/1

federal [10]  2/3 6/13 6/14 32/1 32/9 32/10 32/25 33/3 39/8 46/10

fewer [2]  27/5 29/5

figured [1]  39/7

file [3]  32/10 32/19 44/20

filed [7]  3/15 7/5 7/7 32/16 32/18 33/8 33/10

find [5]  14/20 23/11 23/12 24/5 40/2

finding [1]  5/15

fine [3]  19/11 41/22 44/3

first [6]  4/12 18/8 18/18 23/18 36/23 37/9

Fitzgerald [1] 16/22

flaw [1]  8/15

flawed [1]  6/23

Floor [1]  2/4

FLORIDA [51]

Florida Deceptive [1]  13/23

Florida Supreme Court [1]  19/24

focused [2]  7/1 38/8

foregoing [1]  46/3

form [2]  16/1 38/14

formal [1]  9/13

format [1]  34/12

former [1]  28/7

forth [4]  16/6 18/9 28/12 29/11

forthright [1]  25/24

forward [1]  22/8

found [3]  21/14

# F

found... [2]  23/24 24/1
FOUNDATION [1]  1/9
four [1]  40/15
FPR [2]  2/3 46/9
frame [1]  36/16
fraud [2]  12/14 36/6
FTR [1]  2/7
Fulton [1]  5/21
fun [1]  39/10
fundamental [1]  18/10
funeral [4]  16/13 16/24 28/13 29/1
further [2]  11/13 38/13
future [1]  24/13

# G

gave [3]  29/17 29/18 34/7
gene [1]  40/16
genetic [4]  23/2 23/11 23/11 23/12
Georgia [60]
get [5]  9/11 11/22 22/4 28/25 44/9
gets [3]  28/6 28/10 32/13

getting [1]  35/10
gift [15]  8/25 9/13 9/14 9/17 9/18 9/19 9/22 9/23 10/9 10/18 11/4 11/11 11/14 11/18 16/3
gifts [2]  8/21 9/6
gingerly [1]  40/9
give [5]  31/3 39/14 41/13 43/12 44/19
given [1]  44/12
gives [1]  21/19
glad [1]  40/16
go [22]  3/24 4/6 7/19 8/14 10/20 11/13 12/3 12/6 13/4 19/11 21/24 22/4 22/5 22/8 22/20 25/1 27/14 29/1 30/3 36/22 40/10 42/23
goes [1]  34/23
going [39]  3/21 4/1 4/3 12/10 13/1 13/4 21/21 24/7 24/16 24/19 25/4 25/6 25/8 26/3 26/4 26/5 28/3 28/12 28/16 28/25 30/18 30/22 30/23 31/3 31/17 31/20 33/20 34/15 36/18 37/16 37/22

38/2 38/10 41/10 41/11 41/12 42/8 42/12 44/9
Gold [1]  2/7
gone [2]  9/7 35/1
good [12]  3/6 3/11 18/7 22/18 27/6 28/8 39/3 41/15 42/22 43/14 43/23 44/3
goods [1]  13/25
got [8]  9/20 21/22 28/5 28/12 29/11 29/11 31/25 34/15
gotten [1]  24/11
govern [1]  7/8
governed [1]  19/20
grant [4]  41/11 41/12 42/8 43/18
granted [1]  14/19
great [1]  40/23
gripes [3]  33/22 33/23 33/23
ground [1]  4/22
Group [2]  1/18 3/7
guess [1]  36/13
guessing [1]  7/22
guy [3]  28/8 28/8 28/8
guys [2]  38/6 39/14

**Hanchett [9]** 1/22
3/9 3/12 4/3 20/9
25/14 33/6 42/23
44/6
**hand [1]** 39/11
**handed [1]** 38/12
**handled [1]** 31/13
**happened [2]** 16/15
32/21
**harassment [1]**
15/20
**hard [4]** 15/7 36/4
36/22 43/24
**has [13]** 3/15 3/19
5/3 5/8 11/14 14/18
14/20 14/21 17/7
17/9 28/10 31/6
43/7
**have [60]**
**haven't [3]** 24/11
33/5 37/2
**Having [1]** 35/1
**he [39]** 5/15 8/25
9/1 10/5 10/9 11/5
18/11 19/5 23/24
24/3 24/6 24/8 24/9
24/10 24/18 25/8
25/14 26/13 26/15
29/9 29/10 29/17
29/18 31/1 32/16
34/7 35/22 39/18

39/24 40/15 40/21
40/21 40/23 40/25
41/2 41/5 41/5
41/25 42/22
**he'll [1]** 31/21
**he's [12]** 16/23
18/11 25/13 27/15
31/25 35/23 35/24
40/23 42/20 42/21
43/25 44/4
**hear [3]** 3/15 37/16
37/24
**hearing [2]** 1/13
16/24
**heart [17]** 8/18
11/23 15/9 26/6
26/6 28/14 28/15
28/25 29/2 29/20
29/22 29/24 30/3
30/6 30/9 31/4 31/4
**heart-to-heart [1]**
26/6
**held [1]** 4/24
**helping [1]** 40/15
**her [15]** 6/21 11/5
11/15 11/19 22/23
23/8 23/15 23/16
28/5 28/6 28/7
28/11 28/22 29/13
38/19
**here [22]** 7/5 7/7
7/14 7/22 9/23 11/6

12/8 15/18 17/7
22/22 23/17 26/9
26/11 31/12 33/10
33/13 34/2 34/6
35/4 35/15 36/6
41/4
**here's [6]** 7/21
23/21 24/16 25/25
28/20 35/18
**Hey [1]** 38/9
**hide [2]** 24/15
24/22
**him [7]** 9/3 32/1
37/22 40/15 41/4
44/2 44/5
**himself [1]** 17/9
**his [16]** 4/14 5/14
9/24 11/5 11/15
16/3 17/10 26/25
28/7 29/2 29/18
29/20 29/24 31/1
34/7 38/17
**home [3]** 16/13
28/13 29/2
**honest [1]** 25/23
**Honor [43]** 3/6 3/11
4/5 4/9 5/19 6/19
7/4 7/11 8/5 8/16
9/5 10/15 10/25
11/13 12/1 12/12
13/4 13/13 14/11
15/16 16/1 17/2

## H

Honor... [21]  17/6
 17/17 18/5 18/7
 23/4 30/3 31/22
 33/7 35/6 37/24
 39/7 39/12 41/8
 42/10 42/20 42/24
 43/11 43/17 44/8
 44/22 45/8
HONORABLE [1]
 1/14
honored [1]  9/18
hope [1]  41/23
horrible [1]  30/24
how [8]  9/10 18/20
 19/13 21/15 33/20
 42/10 42/11 42/22
however [5]  18/10
 25/13 26/8 26/8
 36/16
huh [1]  12/16
hung [1]  15/21
husband [4]  28/7
 28/9 40/14 40/19
husband's [2]
 28/25 31/4

## I

I'd [1]  18/8
I'll [9]  3/15 3/17
 11/9 35/4 37/21
 43/12 43/18 43/22

I'm [57]
I've [9]  9/20 12/4
 12/5 21/21 26/15
 38/12 40/7 43/24
 44/4
idea [4]  6/8 6/20
 39/13 41/15
identify [1]  3/4
ignores [1]  8/19
impact [2]  17/24
 20/7
important [1]
 22/16
inaudible [7]  24/21
 26/23 31/21 39/21
 39/23 42/21 43/20
INC [1]  1/9
inclined [1]  14/4
included [1]  4/11
including [5]  18/18
 32/24 33/9 33/15
 36/20
incomprehensible
 [1]  36/14
incorporate [2]
 22/3 22/6
incorporated [2]
 3/22 3/24
indicate [1]  3/5
individuals [1]
 33/14

infliction... [1]
 15/19 15/25 16/2
 16/9 17/1 27/16
 27/20 28/22 34/17
 36/16 37/4
injury [2]  17/24
 36/25
insistence [1]  7/1
instructions [1]
 11/19
intended [1]  14/7
intentional [15]
 15/15 15/19 15/25
 16/2 16/9 17/1
 27/16 27/19 27/22
 28/1 28/22 34/8
 34/17 36/16 37/4
interacting [1]
 14/24
interaction [1]
 14/21
interest [5]  4/14 6/9
 17/10 21/4 36/24
Interestingly [1]
 5/19
interfere [1]  21/4
interference [3]
 20/24 35/15 37/4
interment [1]  5/18
interrupt [1]  7/21
Investigation [1]
 33/24

**I**

involve [1]  16/9
is [117]
Island [1]  1/19
isn't [9]  8/4 18/24
 21/12 23/15 24/19
 24/20 27/20 35/21
 37/14
issue [11]  11/24
 13/20 23/2 23/17
 23/19 24/11 24/12
 25/6 27/10 27/13
 38/13
issues [1]  18/11
it [100]
it's [46]  5/1 5/6 6/5
 7/7 7/12 10/10
 11/16 11/18 15/7
 15/11 17/6 17/8
 18/9 18/19 18/22
 18/23 19/15 20/15
 20/19 21/22 22/15
 23/10 23/14 24/18
 24/19 30/11 34/6
 34/8 34/14 34/23
 35/15 35/16 35/22
 35/23 35/24 36/4
 36/9 36/13 36/22
 38/22 39/10 39/25
 40/5 41/20 43/4
 45/3
its [4]  5/19 15/14

itself [1]  29/22

**J**

January [1]  1/8
Jernigan [1]  22/18
judge [4]  1/14 20/2
 38/5 39/8
judges [1]  30/15
judgment [1]  14/19
just [20]  3/17 12/22
 13/6 13/8 17/4 19/6
 23/20 24/1 24/25
 26/3 32/25 34/6
 35/3 36/14 36/21
 37/8 37/18 41/10
 41/12 42/21

**K**

Karen [2]  1/18 3/7
Karen Larson [1]
 3/7
Kelly [2]  14/15
 14/16
Kennedy [1]  1/23
kids [1]  28/9
kin [9]  4/12 4/21
 5/3 5/17 6/9 6/11
 8/10 14/24 17/8
kind [6]  28/2 28/8
 30/11 37/3 37/4
 37/25
kinds [1]  35/7

**K**irksey [1]  22/18
Kirksey v. Jernigan
 [1]  22/18
know [15]  14/20
 23/7 29/8 29/19
 29/23 32/12 32/20
 33/2 33/20 33/22
 35/13 39/19 42/6
 42/24 43/6

**L**

laborious [1]  12/6
larceny [1]  5/1
Larson [2]  1/18 3/7
last [2]  35/5 42/3
later [1]  43/5
law [40]  1/18 1/23
 3/7 3/9 3/13 4/19
 5/1 6/13 6/13 6/14
 7/1 7/2 7/3 7/8 7/9
 7/12 8/7 8/12 15/10
 17/9 18/19 19/1
 19/14 19/20 19/25
 20/5 20/6 20/24
 20/25 20/25 22/18
 25/18 27/9 34/6
 34/7 34/24 38/4
 39/1 39/3 42/5
lawful [1]  5/5
Lawson [1]  16/12
lawsuit [2]  17/15
 32/19
lawyer [1]  16/23

**L**

leading [1]  39/10
least [2]  21/25
 42/12
leave [3]  41/13 42/9
 43/19
lectern [1]  4/7
less [1]  27/10
let [4]  23/20 24/12
 29/21 34/10
let's [2]  18/10 21/2
letter [1]  14/17
level [2]  16/5 16/20
lex [2]  7/13 20/13
license [7]  9/11
 9/21 38/15 38/17
 38/18 39/24 39/24
Life [1]  16/6
Life v. McCarson
 [1]  16/6
LIFELINK [22]
 1/9 3/3 3/10 3/13
 3/14 8/18 11/7
 11/22 13/22 15/21
 15/22 16/2 16/10
 16/15 16/25 19/18
 28/11 31/5 33/9
 33/12 33/15 34/1
lifetime [6]  9/10
 9/15 9/24 11/5
 11/15 16/4
like [19]  4/7 5/12

5/22 6/1 6/24 12/3
13/11 13/21 22/2
22/3 22/9 23/11
23/12 29/23 35/10
35/21 37/25 40/13
44/9
limit [1]  11/19
limits [1]  4/23
listen [1]  35/4
litigate [1]  34/2
little [2]  26/25
 44/17
live [1]  24/9
lived [1]  24/10
living [1]  9/12
local [3]  3/7 20/5
 26/7
loci [2]  7/13 20/13
long [3]  39/4 45/2
 45/3
look [2]  3/19 20/7
looked [1]  21/15
looking [2]  26/6
 28/8
looks [4]  7/12 7/13
 40/23 41/2
lot [10]  7/23 24/7
 26/2 31/25 32/5
 32/6 36/20 41/11
 44/5 45/3
love [2]  30/13 35/17

**M**

made [14]  8/25
 9/17 9/22 9/23 10/1
 10/9 10/18 11/14
 11/17 12/7 13/12
 15/19 17/2 32/14
MAGISTRATE [1]
 1/14
main [3]  5/13 34/17
 37/15
make [9]  5/7 9/10
 9/14 12/13 25/4
 29/2 38/9 38/10
 41/17
making [1]  29/9
manufacturers [1]
 36/19
many [2]  35/1
 42/10
mapping [1]  23/12
Marco [2]  1/19
 41/6
match [1]  28/6
matter [4]  19/10
 34/6 38/21 46/5
matters [2]  3/20
 19/12
may [5]  21/13
 24/25 32/12 32/14
 44/17
maybe [6]  10/20
 10/21 28/17 35/13

maybe... [2]  37/5 38/22

McCarson [1]  16/6

me [32]  4/7 6/24 9/20 12/3 13/1 13/2 18/25 19/10 19/11 23/20 24/12 27/8 28/25 29/21 31/3 31/3 31/5 31/22 32/4 34/10 38/7 38/8 38/19 39/11 39/14 40/12 40/21 40/24 41/5 42/20 43/6 44/9

mean [11]  12/19 13/16 13/19 19/4 24/19 24/22 29/24 30/3 30/11 34/6 40/10

means [2]  20/5 34/13

Medical [1]  5/21

meeting [1]  44/24

memoranda [1] 12/5

memorandum [4] 9/9 15/4 15/17 17/21

memory [1]  45/4

men [1]  31/23

Merenda [2]  1/22

MEs [1]  4/21

mess [3]  21/23 31/12 31/13

messed [1]  30/23

met [1]  42/21

methods [1]  23/11

Metropolitan [1] 16/6

MIDDLE [2]  1/1 46/11

might [6]  10/21 12/6 12/25 34/1 37/19 37/20

mind [1]  37/15

mine [3]  26/23 27/1 40/1

minute [2]  39/19 39/25

mixed [1]  8/6

monetary [2]  6/11 17/25

moral [1]  41/5

more [6]  7/23 13/7 18/9 31/25 35/16 36/7

morning [3]  3/6 3/11 18/7

most [2]  20/7 40/16

mostly [1]  20/15

motion [15]  1/13 3/15 4/10 4/18 5/20

13/6 13/13 18/16 24/4 41/13 42/9 43/18

moved [1]  12/1

Mr [20]  4/3 4/14 9/23 10/18 11/17 16/3 16/11 16/12 20/9 23/22 25/14 28/19 29/24 33/6 34/11 37/10 42/23 43/20 43/25 44/6

Mr. [7]  19/17 26/10 29/5 29/8 31/20 35/17 40/11

Mr. Mulville [1] 19/17

Mr. Zelig [6]  26/10 29/5 29/8 31/20 35/17 40/11

Mrs [6]  6/21 8/17 11/17 13/21 22/23 30/7

Mrs. [6]  4/16 11/7 11/12 11/23 15/20 15/22

Mrs. Mulville [4] 4/16 11/12 15/20 15/22

Mrs. Mulville's [2] 11/7 11/23

Ms. [3]  14/16 32/18

# M

Ms.... [1] 35/2
Ms. Kelly [1] 14/16
Ms. Mulville [2]
 32/18 35/2
much [4] 36/7
 42/11 43/9 45/1
multiple [3] 16/8
 25/5 37/20
MULVILLE [23]
 1/6 3/3 4/16 6/21
 8/17 8/23 9/23
 10/18 11/12 11/17
 13/21 15/20 15/22
 16/16 16/17 17/5
 19/17 22/23 23/22
 29/24 30/7 32/18
 35/2
Mulville v.
 LifeLink [1] 3/3
Mulville's [6] 4/14
 6/21 11/7 11/17
 11/23 16/3
my [32] 7/10 9/20
 9/21 9/25 18/10
 18/15 20/1 20/3
 21/10 21/14 23/10
 25/12 26/4 26/21
 28/9 28/25 29/1
 30/6 31/3 31/12
 31/15 34/19 35/5
 35/10 35/14 36/21
 38/9 39/16 40/7
 40/8 40/14 44/24
myself [1] 37/2

# N

named [2] 33/8
 34/5
National [1] 15/13
nature [2] 6/4 14/2
necessarily [2]
 21/12 23/16
need [7] 11/6 11/11
 19/6 32/3 32/6
 42/12 42/16
needed [3] 9/3 11/7
 11/22
needing [1] 11/16
needs [4] 17/16
 18/9 31/15 36/8
negligence [6]
 17/19 22/10 35/13
 35/14 35/15 37/6
neither [1] 43/7
never [4] 9/1 16/17
 36/11 40/14
next [10] 4/12 4/21
 5/3 5/17 6/8 6/11
 8/10 14/24 17/8
 41/14
Nice [1] 44/24
night [1] 42/3
Nikki [3] 2/3 46/9
 46/9

nos [24] 1/3 4/24 8/5
 8/12 11/5 11/8
 12/12 12/14 17/6
 17/8 17/21 17/21
 18/17 21/8 24/22
 26/1 29/14 35/23
 36/6 38/6 39/13
 40/12 41/2 44/8
No. [1] 3/3
nobody [1] 11/15
none [2] 18/14
 18/14
North [10] 2/4 5/21
 24/4 24/6 24/8
 25/10 25/11 38/20
 39/19 39/23
not [80]
nothing [5] 13/7
 14/1 16/10 21/14
 23/25
notion [3] 4/16
 17/14 38/9
notions [1] 4/10
now [11] 8/22 12/1
 23/19 23/24 24/20
 27/4 29/13 30/25
 35/16 38/12 40/24
nowhere [1] 28/3
nurse [1] 40/14

# O

obey [1] 11/19
obtain [1] 6/11

Case 8:18-cv-02779-TGW   Document 41   Filed 04/23/20   Page 64 of 74 PageID 1397

**opposition [1]** 5/20

**ownership [1]** 5/7

obviously [2]  19/5
26/16
occurred [2]  9/19
26/8
off [3]  12/10 26/16
36/19
offering [1]  13/25
Official [2]  2/3
46/10
Oh [2]  12/19 14/16
okay [71]
old [2]  7/13 31/22
old-fashioned [1]
31/22
older [2]  27/7 32/2
Once [1]  14/20
one [19]  6/20 12/7
14/14 15/16 16/20
19/7 22/10 22/16
29/12 29/15 30/13
31/2 32/22 38/7
39/14 42/2 43/14
43/21 43/25
ones [1]  22/7
only [6]  11/2 11/3
11/3 11/16 16/17
34/11
open [2]  7/4 8/23
opposed [2]  34/11
41/22
opposing [1]  33/11

Orchid [1]  1/19
order [4]  21/5
36/24 43/21 43/22
organ [6]  8/20
14/25 15/13 23/22
24/18 25/8
other [13]  5/5 8/15
23/11 25/25 32/10
32/24 34/24 37/13
37/25 38/7 39/11
39/15 42/21
others [1]  6/1
our [13]  4/10 4/18
5/20 9/8 10/24
14/23 15/2 15/4
15/4 15/16 15/25
17/20 28/15
out [13]  13/5 13/6
14/20 15/4 15/16
21/16 23/24 24/1
29/6 29/9 36/6
37/20 40/2
outlook.com [1]  2/5
outrageousness [1]
16/5
overall [1]  12/7
overlooked [2]  42/1
42/1
own [7]  4/17 6/21
9/6 22/23 28/15
31/7 31/9

**P**

p.m [2]  1/8 45/9
paint [1]  20/3
paragraph [2]  13/8
13/8
paragraphs [1]
22/3
part [2]  11/9 33/21
particular [1]  32/7
particularly [1]
22/17
parties [1]  17/12
partner [1]  18/15
partners [1]  3/12
parts [7]  6/12 6/15
28/11 28/14 29/17
29/18 35/10
pecuniary [4]  4/13
6/4 6/22 8/10
pending [2]  33/3
33/16
people [4]  31/24
34/2 35/3 35/9
period [1]  28/17
permission [4]  9/3
28/11 29/1 34/7
permit [1]  3/20
person [2]  40/13
40/17
persons [1]  14/12
Peters [3]  2/3 46/9

P

Peters... [1]  46/9
phone [3]  27/19
 28/6 28/10
physical [1]  17/24
pitcher [1]  28/8
place [4]  5/15 7/6
 7/16 7/17
plaintiff [9]  1/18
 5/8 5/9 5/13 5/19
 5/24 6/17 15/13
 18/6
plaintiffs [6]  1/7
 3/8 4/13 8/22 14/3
 15/8
pleading [11]  3/18
 10/11 18/8 21/20
 21/25 22/22 31/12
 31/14 31/15 32/9
 44/10
pleadings [1]  32/13
point [21]  9/25
 12/13 13/6 13/12
 15/16 17/3 22/1
 23/13 23/20 23/21
 24/16 25/25 26/1
 26/4 28/20 29/4
 35/18 36/5 36/23
 39/13 42/8
points [1]  25/13
poorly [1]  31/8
portray [1]  29/11

position [5]  9/2
 15/4 19/1 23/7 37/9
positions [1]  12/20
possess [3]  5/5 5/12
 5/17
possibly [1]  16/25
Powell [4]  4/19
 5/23 18/18 22/17
practice [2]  31/25
 35/9
practiced [1]  27/9
Practices [1]  13/23
precedent [1]  11/10
predicate [1]  36/7
predicated [1]  6/20
prejudice [1]  41/12
preservation [1]
 5/18
pretty [2]  43/24
 44/9
principles [5]  7/8
 19/24 20/11 20/12
 20/14
probably [2]  23/21
 36/18
problem [5]  3/25
 16/20 18/1 37/7
 42/15
procedure [1]  31/8
proceed [1]  6/18
proceeding [1]  3/2
proceedings [3]  2/7

process [2]  31/9
 31/11
procure [2]  8/18
 11/23
procurement [1]
 15/24
produced [1]  2/7
productive [1]  13/1
Professor [1]  39/9
prohibit [1]  6/14
prohibited [1]  18/3
prohibition [1]
 7/20
proper [1]  6/17
properly [1]  30/23
property [29]  4/13
 4/23 4/25 5/6 5/7
 5/9 5/16 6/3 6/5 6/9
 6/22 8/10 8/12 15/6
 15/6 15/11 17/8
 18/2 18/17 21/1
 21/3 21/4 21/6 21/7
 21/17 21/18 22/15
 36/23 36/25
protected [1]  22/25
protecting [1]
 43/25
protective [1]  22/21
provides [1]  17/11
punitive [2]  12/18
 42/4

**P**

purposes [3]  5/12 5/17 6/6

pursuant [1]  16/3

put [5]  13/16 13/17 24/21 28/18 29/25

putting [1]  37/13

**Q**

quasi [9]  5/9 5/16 6/3 17/7 21/1 21/3 21/7 21/17 22/15

question [7]  5/13 7/4 11/16 21/14 21/16 29/14 30/6

questioning [1] 21/15

quite [1]  34/13

quote [4]  6/3 6/5 8/23 8/24

quoting [1]  4/25

**R**

Radio [1]  43/1

read [8]  5/10 10/17 12/5 12/5 15/17 27/17 43/20 43/23

reading [1]  27/18

real [4]  16/20 20/23 27/10 28/4

really [18]  12/19 13/16 13/16 14/7 16/7 31/11 36/4

36/9 36/15 36/19 37/1 37/3 37/14 38/9 38/11 38/21 39/5 41/23

reason [6]  6/23 11/20 23/15 23/16 24/22 29/16

reasons [2]  10/14 39/14

receive [1]  15/12

receiving [1]  6/14

recently [2]  24/1 32/25

recess [1]  45/7

recognize [1]  5/9

recognizing [1] 5/11

recompense [1] 15/9

record [3]  3/4 45/5 46/4

recorded [1]  2/7

Recording [1]  2/7

redo [3]  31/17 31/18 31/20

refer [1]  22/17

regarding [2]  17/3 33/11

registry [1]  9/12

regularly [1]  3/19

rehashing [1]  12/22

reinter [1]  5/14

rejecting [1]  36/8

relationship [1] 36/8

relationships [1] 7/12

relied [2]  18/15 37/3

relief [1]  29/22

religion [1]  30/16

remains [2]  4/14 8/13

remember [1]  43/2

removal [1]  5/24

remove [1]  4/21

removed [3]  32/22 32/24 33/5

remuneration [1] 18/2

reply [1]  12/25

Reporter [2]  2/3 46/10

reporting [1]  16/23

represent [1]  3/5

request [1]  30/6

required [1]  8/17

requirement [1] 14/13

requires [2]  13/24 15/5

research [3]  21/11 21/13 37/2

resided [1]  24/10

# R

respect [12]  8/20
12/2 12/14 14/10
15/5 15/7 16/9
17/25 23/2 29/22
31/9 38/23
respected [1]  30/20
respectful [1]  31/23
respond [2]  44/13
44/21
response [3]  12/25
13/6 13/12
responsible [2]
26/20 37/12
result [1]  8/11
returned [1]  30/7
revoke [2]  11/15
11/19
Richard [3]  1/22
3/9 3/12
Richard Hanchett
[1]  3/12
RICO [25]  3/22
4/16 12/14 12/23
13/3 15/14 21/2
21/5 21/7 21/18
22/4 22/5 22/6
35/21 35/21 35/22
35/23 35/25 36/1
36/4 36/11 36/19
36/24 37/3 37/19
right [67]

rights [2]  22/21
29/17
ripe [1]  24/19
rise [1]  16/5
Rivers [1]  5/12
road [1]  22/5
rough [1]  39/16
roundly [1]  22/1
RPR [2]  2/3 46/9
rude [1]  28/21
rudeness [2]  29/6
29/7
Rule [2]  7/18 17/11
rules [1]  19/20
ruling [1]  24/17
runs [1]  8/16

# S

said [17]  4/9 5/1
5/16 6/2 8/9 12/25
14/16 14/20 19/6
20/10 21/22 22/19
24/6 24/6 39/16
42/2 43/23
same [5]  8/11 15/6
18/1 32/20 42/20
say [28]  3/17 9/9
9/16 11/2 11/13
11/20 12/19 12/24
14/7 17/18 18/17
18/22 18/23 18/24
19/10 19/15 21/3
25/14 25/15 26/24

29/16 29/17 30/25
31/5 33/22 34/8
43/12 44/7
saying [9]  21/13
23/22 27/21 28/4
30/19 36/14 37/17
38/7 42/22
says [8]  17/5 17/9
18/6 18/11 21/16
27/25 40/14 40/15
schemes [1]  11/1
school [1]  39/3
scrupulously [1]
23/21
second [2]  2/4
16/21
see [7]  34/2 34/15
36/1 37/3 41/13
41/23 42/2
seem [2]  15/9 17/5
send [1]  38/19
sense [1]  34/15
sepulture [1]  5/5
serially [1]  22/7
services [1]  13/25
set [3]  13/5 16/6
18/9
sets [1]  15/4
seven [1]  12/2
several [2]  3/22
28/16
Shack [1]  43/1

Case 8:18-cv-02779-TGW   Document [89] 7/12   Filed 08/23/19   Page 68 of 74   Page 12/24 16/12 16/13

shape [3]  28/7
40/23 42/22
she [19]  5/25 11/5
11/18 14/18 14/20
14/21 14/21 23/1
23/6 23/8 23/9
23/17 24/5 24/5
28/6 28/10 28/13
32/19 40/12
she's [4]  14/17 30/8
40/4 40/8
shelf [2]  29/25 30/4
shock [1]  29/12
shoes [1]  35/2
shoot [1]  34/15
short [1]  27/16
short-changing [1]
27/16
shorten [1]  28/5
shotgun [5]  3/18
21/25 32/13 34/12
34/14
should [9]  6/4 6/23
30/16 30/20 30/21
39/14 41/4 42/6
43/19
show [1]  31/8
sic [1]  31/6
sign [1]  30/2
signed [4]  26/16
30/25 31/1 37/11

significant [8]  7/12
19/3 19/16 20/7
20/8 20/12 25/5
38/25
similar [1]  11/1
simultaneous [2]
25/5 37/20
since [2]  7/7 29/5
sir [1]  7/25
sitting [1]  30/4
situations [1]  35/2
six [1]  28/9
skinned [1]  44/4
so [80]
So.2d [1]  20/4
solicitation [1]
30/15
solicitous [1]  30/21
some [15]  7/2 7/16
9/3 13/15 15/19
21/7 23/2 26/2
29/21 30/4 30/6
32/11 33/16 37/2
38/14
somebody [7]  9/17
11/14 13/20 14/18
15/21 15/22 30/4
somehow [2]  39/22
41/24
someplace [2]
10/23 38/14
something [8]  6/17

12/24 16/12 16/13
22/2 22/2 23/11
23/12
sometimes [1]
40/17
somewhat [1]  12/6
sorry [1]  35/6
sort [14]  7/1 7/21
10/10 12/15 14/1
14/5 17/4 22/7
23/13 34/17 35/12
35/18 37/14 38/12
sought [1]  17/23
sounds [1]  44/9
special [1]  9/3
specialty [1]  20/3
specific [1]  12/2
specificity [1]  36/8
speculating [1]
25/19
spinning [1]  26/1
spousal [2]  11/2
11/6
spouse [2]  11/2
11/4
stage [1]  18/17
stand [1]  35/2
standards [1]  19/15
standing [2]  14/18
14/21
state [16]  4/19 4/23
5/23 8/12 9/17 9/19

state... [10] 9/24
 10/9 17/24 18/18
 19/21 20/6 32/1
 32/8 32/13 33/8
State v. Powell [3]
 4/19 5/23 18/18
State-court [1] 32/8
statements [1]
 16/22
states [4] 1/1 1/14
 31/2 46/10
statute [17] 4/20
 11/9 13/16 13/17
 13/20 13/23 14/3
 14/6 14/8 15/2 21/2
 21/7 21/18 36/5
 38/3 41/22 41/22
statutes [5] 8/19 9/7
 9/16 11/13 41/23
statutory [2] 7/15
 11/1
stay [1] 15/2
steal [1] 5/1
step [1] 37/22
stepping [1] 40/9
stick [1] 41/21
still [7] 17/24 22/18
 27/15 33/16 34/8
 37/19 40/5
story [1] 7/23
strange [2] 8/22

stretching [1] 37/14
strike [2] 3/15
 12/18
strong [1] 34/22
stuff [2] 28/18 29/6
style [3] 17/4 18/10
 26/25
subject [1] 4/23
submit [1] 8/7
subsequent [2] 3/23
 3/23
substitution [1]
 17/11
succeeding [1] 22/7
such [1] 36/4
sue [1] 14/12
sued [1] 33/13
suggest [3] 10/9
 10/16 23/20
suggesting [4]
 10/17 10/21 37/8
 37/18
suggestion [2]
 13/15 36/21
suggests [1] 14/2
suit [2] 4/8 33/16
Suite [1] 1/24
summary [1] 14/19
support [2] 15/14
 41/5
supporting [1] 9/8

supposed [2] 15/23
 22/24
Supreme [7] 4/24
 5/4 19/16 19/19
 19/24 20/2 22/18
sure [5] 29/23
 34/13 41/2 42/5
 43/1
surmising [1] 8/3
survive [1] 6/3
survivors [1] 30/22
sustaining [1]
 18/16
s\ [1] 46/9

T
take [4] 9/2 12/21
 21/2 44/17
taking [2] 4/22 23/7
talk [5] 18/10 23/18
 26/6 30/15 40/13
talking [4] 14/6
 19/19 28/21 34/20
talks [1] 40/12
TAMPA [4] 1/2 1/7
 1/24 2/4
tell [10] 19/10 27/8
 27/12 28/24 31/5
 32/4 35/4 38/7 40/6
 43/6
telling [4] 13/1 31/3
 38/8 42/25
tells [2] 3/19 20/4

tend [2]  31/23 32/1
tennis [1]  28/6
term [1]  21/18
terms [2]  8/6 38/24
test [1]  19/16
TGW [2]  1/3 3/3
than [7]  7/23 26/23
 26/25 29/5 31/25
 40/24 40/25
thank [10]  18/5
 42/17 43/9 43/11
 43/14 43/17 44/22
 44/24 45/1 45/8
that [238]
that's [39]  4/1 10/4
 13/18 13/18 14/3
 19/11 20/9 20/21
 21/10 22/24 23/8
 23/17 23/20 23/25
 24/7 25/4 25/20
 27/21 27/25 28/3
 29/4 31/11 34/19
 35/12 35/13 35/14
 35/24 36/20 37/1
 39/20 41/15 42/5
 42/16 43/8 43/23
 44/3 44/11 45/2
 45/5
theft [1]  14/16
their [8]  6/25 9/6
 10/18 16/11 16/23

them [9]  6/20 10/15
 12/7 12/17 16/11
 16/13 16/24 26/11
 44/19
theme [1]  12/7
themselves [1]  3/4
then [14]  3/23
 14/18 15/23 19/9
 21/20 22/4 22/5
 28/10 29/1 29/5
 31/4 31/5 34/7
 41/13
theory [2]  13/9
 39/10
there [38]  4/10 4/20
 4/24 5/14 5/16 5/23
 7/6 8/1 8/10 8/12
 10/22 12/2 15/8
 15/18 16/8 16/10
 17/22 18/17 19/11
 20/25 21/13 21/16
 21/16 22/18 27/15
 29/2 30/6 30/18
 32/23 32/25 33/7
 33/9 33/15 33/23
 37/19 38/13 39/18
 41/23
there's [34]  3/24
 4/14 4/15 7/15 7/23
 9/25 10/2 11/5 11/8
 12/14 12/18 12/24

17/8 17/21 17/21
 20/14 21/14 23/10
 23/25 24/22 25/16
 25/18 26/1 27/15
 30/14 30/23 33/3
 33/17 33/22 35/15
 36/6
therefore [1]  6/15
these [8]  3/19 11/1
 16/22 24/17 27/19
 30/13 37/13 41/11
they [45]  3/5 3/24
 8/22 8/24 9/1 9/2
 9/14 12/15 12/19
 12/24 13/12 14/5
 14/6 14/10 14/15
 14/17 14/25 15/9
 15/20 15/23 16/12
 16/14 18/14 18/17
 22/17 28/9 28/21
 29/16 30/15 30/25
 31/5 31/7 31/8
 31/13 32/20 32/22
 32/23 32/24 33/5
 33/13 34/2 35/11
 36/5 38/8 38/22
they're [5]  16/23
 16/24 23/7 34/5
 38/23
they've [2]  18/12
 41/11

thin [1]  44/4
thin-skinned [1]
 44/4
thing [7]  14/1 15/6
 15/16 24/1 26/2
 28/4 37/25
things [4]  9/13
 15/12 24/7 30/22
think [29]  7/4 12/2
 12/22 13/3 13/5
 13/7 15/4 17/2
 17/16 17/20 19/12
 20/2 20/15 20/23
 27/11 29/10 30/5
 30/5 34/22 35/11
 35/14 35/15 37/9
 38/17 38/23 39/12
 39/17 42/25 44/17
thinking [3]  27/19
 35/23 35/24
thinks [1]  35/22
this [54]
THOMAS [1]  1/14
thoroughly [1]
 21/15
those [12]  5/10 6/2
 9/7 9/13 9/14 12/3
 13/4 13/5 16/5
 16/25 22/3 35/7
thought [1]  38/2
three [1]  43/15

through [11]  6/20
 8/18 9/8 12/3 12/7
 13/1 13/4 14/15
 35/1 40/10 40/15
throughout [1]
 8/16
throw [1]  37/20
throwing [2]  36/19
 37/9
thrust [3]  34/17
 36/14 37/15
time [10]  12/22
 15/22 22/9 26/3
 27/10 32/20 37/2
 39/4 45/2 45/3
tissue [1]  14/25
together [1]  28/10
told [6]  13/2 16/11
 16/13 16/23 23/8
 40/7
too [3]  19/11 26/20
 27/10
took [3]  7/6 7/16
 7/17
top [1]  28/7
tort [2]  20/11 20/15
totally [1]  37/22
towards [1]  31/23
trade [6]  13/22
 13/23 13/25 14/14
 14/22 14/25
transaction [2]

14/2 14/13
transcript [3]  1/13
 2/7 46/4
Transcription [1]
 2/7
Transcriptionist [1]
 2/3
Transplant [1]
 15/13
transporting [1]
 15/24
treat [1]  9/22
treated [2]  9/18
 30/23
treatment [1]  17/10
Trenam [3]  1/23
 3/9 3/13
Trenam Law [1]
 3/13
tried [1]  43/1
triggering [1]  11/11
trip [1]  9/21
triple [1]  35/24
truly [1]  31/10
trying [4]  25/23
 25/24 26/20 29/10
Twenty [1]  43/14
Twenty-one [1]
 43/14
two [5]  4/10 11/1
 22/16 31/2 33/4
type [1]  40/17

**U**

UAGA [1]  9/7
UAGAs [1]  9/9
Uh [1]  12/16
Uh-huh [1]  12/16
unauthorized [1]
 5/24
under [15]  8/11
 13/19 14/3 14/12
 14/23 15/2 15/10
 15/12 19/3 19/15
 20/24 20/25 22/24
 31/7 42/5
undermine [1]  4/11
understand [8]  8/5
 10/14 15/8 26/19
 29/13 30/16 32/11
 40/6
understanding [3]
 7/11 23/10 25/12
understood [1]
 36/11
Unfair [1]  13/23
uniform [3]  9/6
 25/18 38/22
UNITED [3]  1/1
 1/14 46/10
unjust [2]  4/15 15/7
until [1]  42/2
up [20]  11/2 11/3
 15/21 17/17 18/20
 19/13 22/12 24/12

26/2 28/5 29/25
 30/23 31/16 33/5
 33/21 34/16 36/22
 41/5 41/9 41/20
uphold [1]  29/16
upon [1]  36/3
upset [3]  16/12
 16/14 32/13
us [5]  3/19 21/19
 41/20 43/7 43/23
use [2]  14/7 27/5
using [1]  18/11

**V**

v. [9]  3/3 4/19 5/21
 5/23 16/6 16/22
 18/18 20/3 22/18
valid [7]  9/17 9/18
 9/18 9/22 9/22
 10/10 10/19
validly [1]  9/20
valuable [1]  6/15
value [1]  15/12
variety [1]  7/14
various [1]  12/20
version [2]  32/7
 41/14
versions [1]  9/6
very [11]  11/1
 16/12 16/14 22/16
 22/19 31/11 34/22
 40/5 40/9 43/9 45/1
view [2]  34/11

34/16
violate [2]  6/12
 6/13
voice [1]  31/24
voices [2]  25/5
 37/20
volunteered [1]
 41/5

**W**

wait [2]  39/18
 39/25
waiting [2]  38/6
 39/14
waiver [1]  29/16
want [20]  6/25 12/4
 12/11 12/18 12/21
 12/25 13/16 14/3
 16/7 17/18 20/20
 24/15 28/15 28/15
 30/1 30/25 34/2
 37/1 42/11 44/7
wanted [6]  5/14
 13/19 22/23 23/17
 27/12 28/9
was [65]
wasn't [2]  21/15
 39/3
wasting [1]  26/3
way [5]  8/19 19/4
 29/18 31/13 32/8
ways [2]  11/14
 42/23

# W

we [48]
we'll [2]  22/12 41/8
we're [7]  7/22 8/1
30/18 33/20 34/22
42/4 44/9
we've [5]  9/7 16/7
17/2 29/11 42/21
weeks [2]  28/17
43/16
weird [1]  30/11
well [49]
went [1]  14/15
were [8]  7/6 15/18
16/12 16/14 16/16
28/21 31/3 38/2
what [59]
whatever [4]  20/20
23/15 28/17 44/15
whatsoever [1]
21/6
wheels [1]  26/1
when [10]  16/19
24/4 25/7 27/4
27/17 27/18 30/2
30/21 30/21 40/14
where [10]  4/20 8/8
11/18 15/21 20/4
27/10 29/19 29/23
32/20 33/2
Where's [1]  30/9
whether [8]  7/3 8/7

32/12 34/23 36/23
which [27]  4/12
5/13 8/8 9/19 11/1
11/22 11/23 13/20
13/22 15/10 15/13
15/16 16/7 18/18
18/19 19/7 19/14
19/14 19/19 19/25
20/3 23/13 23/19
34/1 35/10 38/4
42/1
while [1]  44/17
who [9]  3/5 13/21
17/3 17/12 26/14
31/24 34/11 35/9
39/9
whole [5]  7/23 26/1
32/5 32/6 36/20
why [11]  10/9 13/5
18/22 19/10 23/1
23/17 29/16 31/2
36/13 39/14 39/24
widow [1]  5/14
wife [3]  5/14 35/5
44/25
will [8]  4/5 9/12
11/3 11/3 18/20
24/12 43/15 45/6
WILSON [1]  1/14
without [3]  10/8
17/23 23/5

woman [3]  28/5
29/5 29/12
won't [3]  13/9 43/9
44/2
word [1]  18/12
wording [1]  30/14
words [2]  27/5 29/5
work [4]  8/20 27/3
31/21 36/20
worked [1]  44/4
working [1]  34/1
worry [1]  38/11
would [38]  3/4 4/7
6/12 6/13 6/16 6/24
8/7 10/9 10/16
10/24 11/8 11/20
12/3 13/6 13/11
14/23 15/1 15/2
15/11 15/16 15/25
17/22 19/23 20/5
28/5 28/9 29/23
30/5 30/5 35/3
35/11 35/11 36/7
39/7 39/16 43/22
44/8 44/12
wrong [1]  23/6
Wyoming [3]  9/21
9/22 9/23

# Y

yeah [23]  10/1
10/12 13/1 14/16
14/17 19/12 20/9

## Y

yeah... [16]  24/14
25/1 25/3 25/21
26/12 26/19 27/8
29/8 34/20 34/21
35/19 39/1 39/10
39/17 41/19 43/6
years [4]  35/5 42/25
43/4 45/2
Yellowstone [1]
9/21
yes [15]  7/25 10/2
18/25 22/19 23/4
24/3 24/6 25/10
30/8 31/19 33/2
43/3 43/3 43/22
45/3
yet [4]  8/1 10/3
11/8 24/19
you [142]
you're [16]  10/21
19/9 20/1 21/21
25/8 26/3 26/4 26/5
29/1 29/5 36/18
37/17 38/4 38/7
38/8 39/8
you've [7]  12/6 12/7
13/2 21/22 22/2
28/12 29/11
younger [2]  40/24
40/25
your [60]

Your Honor [36]
3/6 3/11 4/5 4/9
5/19 6/19 7/4 7/11
8/5 8/16 9/5 10/15
10/25 11/13 12/1
12/12 13/4 13/13
14/11 15/16 16/1
17/2 17/6 17/17
18/7 30/3 31/22
33/7 35/6 37/24
39/7 39/12 41/8
42/20 42/24 44/8
yourself [1]  4/8

## Z

Zelig [11]  16/11
26/10 28/19 29/5
29/8 31/20 35/17
37/10 40/11 43/20
43/25
Zelig's [1]  34/11